BERENBROICK v. ST. LUKE'S HOSPITAL IN CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

1. RESERVATION IN DEED—EXTINGUISHMENT—ASSIGNMENT.

A right of re-entry reserved to the grantor in a deed conveying property in fee, subject to a condition subsequent, is a mere right in action, not assignable or grantable, and is extinguished by any subsequent deed by which the original grantor, or his heirs, undertake to transfer, assign, or grant the land, or the reversion of it.

2. VENDOR AND PURCHASER — RESCISSION OF CONTRACT — RECOVERY OF PAYMENTS MADE.

After a vendee of real property, under a contract binding the vendor to give a good title, had made payments on account, he procured an agreement extending his time for the final payment. Upon his default, thereafter, the parties canceled the original contract, and executed mutual releases; the vendor retaining the sums already paid. Prior to the making of the extension and cancellation agreements and releases, both parties were informed of the facts relating to an alleged defect in the title. *Held* that, even assuming the defect to exist, a mistake as to the legal effect of the facts would not entitle the vendee to a cancellation of the agreements, and a recovery of the payments made.

Appeal from special term.

Action by Frederick Berenbroick against St. Luke's Hospital in City of New York and another. From a judgment dismissing plaintiff's complaint, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Robert L. Harrison, for appellant.
William B. Hornblower, for respondents.

WILLIAMS, J. The action was brought to establish and to enforce an alleged vendee's lien upon real property, for purchase money. May 31, 1893, the defendant hospital and the defendant Samuel entered into a written contract whereby the hospital agreed to sell and convey to Samuel property on Fifth avenue, between Fifty-Fourth and Fifty-Fifth streets, New York City, for the sum of $2,-400,000, which Samuel agreed to pay as follows: On the execution of the contract, $50,000; on the 29th day of July, 1893, $50,000; on the 2d day of January, 1895, $620,000,—in cash, and the balance, of $1,680,000, by bond and mortgage on the property. Samuel made the two cash payments, of $50,000 each, at the times agreed upon. On the 19th day of October, 1894, the parties agreed, upon Samuel's paying an additional $100,000 of the purchase price on the 2d day of January, 1895, to an extension of time for the payment of the bal-

ance of cash, and the giving of the bond and mortgage and the taking of the title, until July 1, 1895. The defendant Samuel on the 2d day of January, 1895, failed to pay the additional $100,000 provided for by the extension agreement; and on the 26th day of January, 1895, the defendants canceled the original contract, of May 31, 1893, and, by writing under seal, mutually released each other .from all claims and demands,—the defendant hospital retaining the $100,000 paid upon the contract. By the original contract the hospital agreed to give Samuel a deed of the premises, in fee simple, free from all incumbrances, and the law implied that the title should be a good one. The plaintiff claimed that the cancellation of the contract and the mutual releases made January 26, 1895, were made under a mistake of fact, in that both parties understood and believed, during the whole transaction, that the hospital had good title to the property, and power to convey such title free from incumbrances, whereas in fact the title to the property was during all this time affected or limited by a condition that the premises should forever be used for the purposes of a hospital and chapel, and that the defendant hospital could not, therefore, at any .time, comply with the terms of the contract, so as to entitle itself to retain the $100,000 paid by Samuel. Under this condition of things, it was claimed that Samuel was entitled to a cancellation of the agreement for extension of time, and the agreement canceling the original contract. and the mutual releases between the parties, and to recover back the $100,000 paid by him. The plaintiff, as the assignee of Samuel of one-half of his interest in the contract and the purchase money paid, brought this action, based upon such claim.

The trial court held that there was in fact no defect in the hospital's title, and, if there was, all the facts were known to both the parties, and, if there was any mistake at all, it was a mistake as to the legal effect of such facts, which would not be sufficient to entitle the plaintiff or his assignor to a cancellation of the agreements and releases executed by the parties, and that no right to recover back the purchase money paid existed. There seems to be no doubt but that the facts, as they really existed, were known to Samuel, as well as to the hospital, prior to the time the extension and cancellation agreements and releases were made; and, this being so, there could be no mutual mistake of fact, under which the parties acted, which would enable Samuel to avoid such agreements or releases. A mistake as to the legal effect of such facts would not enable either to avoid the agreements or releases.

A more satisfactory ground for sustaining the decision of the trial court, however, is that the hospital's title was all the time perfect, and unaffected by the condition referred to, as will appear from a review of the facts. The city of New York was the owner of the property in question, and in 1848 gave the deed of it to the Anglo-American Free Church of St. George the Martyr, which contained the condition in question in the following words:

"Provided, always, that these presents are upon this express condition: That the parties of the second part, their successors and assigns, shall and do, within three years from the date hereof, erect upon said ground so conveyed

to them a suitable building or buildings for a hospital and chapel for the accommodation of the British emigrants,—the plan of said buildings to be approved by the mayor of said city,—and that said parties of the second part, their successors and assigns, shall and do forever hereafter use and apply the premises hereby granted for the purposes of the hospital and chapel. In default or in failure of which conditions, or either of them, or in case the land hereby granted shall cease to be used as and for the purpose of the said hospital and chapel for the accommodation of the British emigrants, this present conveyance, and every matter and clause herein contained, shall be null and void, and the said party of the first part, and their successors or assigns, may re-enter into the said land hereby granted, and every part thereof, and hold and enjoy the same as of their former estate therein, anything herein contained to the contrary in any wise notwithstanding; and it is hereby mutually covenanted and agreed by and between the parties hereto that the conditions above specified, or either of them, shall not at any time or times hereafter be relieved, modified, or discharged by the said parties of the first part, their successors or assigns, without the consent of the rector, churchwardens, and vestrymen of Trinity Church in the City of New York, in writing under their seal for that purpose first had and obtained; and the said parties of the second part, for themselves and their successors, do accept and take the said lands upon the conditions and covenants above specified, and, for themselves and their successors, do covenant and grant to and with the said parties of the first part, their successors and assigns, that the said lands shall forever hereafter be appropriated, used, and applied as is hereinbefore mentioned, and not otherwise."

Thereafter, and on March 16, 1852, another deed was given by the city to the Church of St. George the Martyr, for the purpose of correcting a clerical error in the description of the property, which contained the following reference to the condition in question:

"But it is hereby expressly declared by us, the said mayor," etc., "and to be taken as a part of these presents, that nothing herein contained shall extend the grant, powers, and benefit given or allowed to the rector," etc. [party of the second part], "their successors or assigns, in and by the said deed of the tenth day of May, 1848, and its extensions, and that all provisions, conditions, acts, performance, and stipulation on their part embraced therein, or in either, shall still control, and be effective and in force against them."

Thereafter, and on October 15, 1852, the Church of St. George the Martyr gave a deed of the property to the defendant, which contained the following reference to the condition in question:

"To have and to hold, all and singular, the said piece or parcel of ground, with the appurtenances, unto the said parties of the second part, their successors and assigns, forever, for the use and purposes of a hospital and chapel; subject, however, to the express conditions, covenants, and agreements contained in the instrument of same date herewith, heretofore mentioned, and the true fulfillment of the same from time to time, and at all times hereafter."

The instrument here referred to was not put in evidence, but it is assumed that the reference made is to the condition fully set out in the deed of 1848. Thereafter, and on November 20, 1852, the city gave another deed of the property to the defendant hospital, which made no reference in any way to the condition in question, but which contained the ordinary words of bargain, sale, and release. All these deeds were put upon record. It is clear that by the latter deed the conditions imposed by the deed of 1848 upon the ownership of the property were wholly released and discharged. It is well settled that where a deed of property in fee is made, with a condition subsequent imposed, and a right of re-entry reserved to the grantor, the right of re-entry is a mere right in action, and not an interest in the land; that it is not assignable nor grantable; that

it descends to the grantor's heirs, but does not pass by a conveyance. And any deed by which the original grantor, or his heirs, undertakes to transfer, assign, or grant the land, or the reversion of it, while it may be ineffectual to convey title to the grantee, does operate to put an end to the rights of the grantor. 6 Am. & Eng. Enc. Law, 904; Underhill v. Railroad Co., 20 Barb. 455; Post v. Weil, 8 Hun, 418; Washb. Real Prop. (5th Ed.) 118; Ger. Real Estate (3d Ed.); Tinkham v. Railroad Co., 53 Barb. 393–396; De Peyster v. Michael, 6 N. Y. 468, 506; Nicoll v. Railroad Co., 12 N. Y. 121; Towle v. Remsen, 70 N. Y. 305. The city (the grantor in the deed of 1848, which imposed the condition in question), by its later deed to the hospital defendant, sold, conveyed, and released the property, and all its interest therein; and this deed clearly operated to release the land from the condition. The right to re-enter for breach of condition was gone forever, and the condition has never since that time affected or restricted the hospital defendant's interest in the property.

The case was properly disposed of by the trial court. The judgment appealed from should be affirmed, with costs.

BARRETT, RUMSEY, and PATTERSON, JJ., concur. VAN BRUNT, P. J., concurs in the result.