SEYMOUR v. ST. LUKE'S HOSPITAL.

(Supreme Court, Appellate Division, First Department. April 7, 1898.)

1. REAL-ESTATE AGENT—COMMISSIONS.
   After plaintiff, a real-estate broker, employed by defendant to procure a purchaser for certain land negotiated by the manager of the defendant under a contract entitling him to the usual commission (amounting to $24,000), had found a purchaser, and brought the parties together, he made a further special contract with defendant to accept $6,500, the balance of commissions to be paid on the purchaser fully performed the proposed terms of purchase. The purchaser paid, and the contract of sale executed, but the purchaser defaulted in payment, and plaintiff brought action on the special contract to recover the balance of commissions. Held, that, in order to recover, plaintiff was bound to show that performance by the purchaser had been prevented by the defendant.

2. SAME—CANCELLATION OF SALE.
   The date fixed for the performance which would have entitled plaintiff to the balance of commissions was January 2, 1895. Prior thereto defendant agreed with the purchaser, without plaintiff's consent, that, if he would pay $100,000 on account on January 2d, his time to pay the rest of the purchase price would be extended to July. The purchaser failed to make the $100,000 payment, and, the defendant being thus entitled to accept the default as a forfeiture, the contract of purchase was canceled by mutual consent of the

parties thereto. *Held*, that plaintiff was in no wise injured by the cancellation, and derived from it no cause of action against defendant.

Appeal from trial term, New York county.

Action by Charles A. Seymour against St. Luke's Hospital. From a judgment on a verdict ordered by the court, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Julius H. Seymour, for appellant.

William D. Hornblower, for respondent.

RUMSEY, J. In the year 1893 the defendant, being the owner of a large parcel of land in the city of New York which it desired to dispose of, made an arrangement with the plaintiff, by which he was to procure a purchaser of the premises at the price of $2,-400,000, for which he was to receive the ordinary broker's commission of 1 per cent., or $24,000. The plaintiff succeeded in finding a person who was willing to make the purchase, and he brought the parties together for that purpose. Before the contract of sale was finally completed, the defendant expressed some disinclination to accept the proposed purchaser, and, by way of removing that hesitation, the plaintiff entered into a special agreement with the defendant with regard to the payment of his commissions, which will be more particularly referred to later. After that agreement had been made, the defendant entered into a formal contract for the sale of its premises to one Samuel, who was the purchaser produced by the plaintiff. The contract was dated on the 29th of May, 1893, and seems to have been actually executed on the 1st day of June. By its terms, the defendant agreed to sell the property to Samuel for $2,400,000; $50,000 of which was paid at the time of the execution of the contract, $50,000 was to be paid on the 29th of July, 1893, and the contract was to be carried out between the parties on the 2d of January, 1895, by the payment to the defendant of $620,000 in money, and securing to it the remainder of the purchase price by mortgages upon several lots sold, in a manner which is not important in this connection. Just before the contract was entered into between Samuel and the St. Luke's Hospital, the plaintiff executed and delivered to the defendant a letter, of which the following is a copy:

"Office of Evarts, Choate & Beaman, No. 52 Wall Street.

"New York, May 31st, 1893.

"George M. Miller, Chairman Committee of St. Luke's Hospital—Dear Sir: I agree to receive sixty-five hundred dollars ($6,500) brokerage for the sale of St. Luke's Hospital, and the balance of one per cent. on $2,400,000 to be paid when the contract made with Lewis S. Samuel is fulfilled and the balance of purchase money, namely, $620,000, and bonds and mortgages to the extent of $1,680,000, are received and deeds delivered. In the event of the transaction not being fulfilled, I waive all claims for further brokerage than $6,500.

"Yours, respectfully,          Charles A. Seymour & Co."

Immediately after the contract was executed, $6,500, being the first installment of his commissions, was paid to the plaintiff by

the defendant, and he executed a receipt for it, of which the following is a copy:

"Received, New York, June 1st, 1893, from St. Luke's Hospital, $6,500, being the amount within named as to be paid us on account our brokerage for sale of its site to Lewis S. Samuel, as per contract for the same dated May 29th, and made yesterday, and being all that is to be paid us for such brokerage if such contract is not fulfilled.   $6,500.               Charles A. Seymour & Co."

The contract between Samuel and the St. Luke's Hospital was never performed, but on the 26th of January, 1895, it was canceled by mutual consent; the plaintiff, however, not being consulted about it. After that had been done the plaintiff brought this action to recover his commissions. An answer was interposed by the defendant, upon which the case came to trial. The action as originally brought was upon a quantum meruit, and it was tried upon the complaint thus framed until the evidence had been closed. The defendant had set up the letter copied above, as constituting the true agreement between the parties for the payment of the commissions, and at a certain stage of the trial, after the defendant had the case, this contract and receipt were read in evidence. After the testimony was closed the plaintiff moved for leave to amend his complaint by setting up a special contract set out in the letter of May 31st, which has been quoted above, and that amendment was finally allowed by the court. After the complaint had been thus amended the court ordered a verdict for the defendant, upon which a judgment was entered, from which this appeal has been taken.

The plaintiff insists, in the first place, that as he had been employed to sell this property for the defendant at the usual commission, some time before the 31st of May, 1893, his contract of that date was without consideration, and therefore is not binding upon him. However much weight might have been given to this contention had the pleadings remained in their original state, it is quite clear that after the plaintiff had so amended his complaint as to bring his action upon this contract, and sue for its enforcement, he is not at liberty to say that the contract is not one which can be enforced, or, if he does say it and procures a ruling to that effect, it would put him out of court. That point, therefore, need not be any longer considered. The usual rule, where a broker has been employed to effect a sale of property, is that if he finds a purchaser of sufficient responsibility, willing to take the property upon the terms stated, he has performed his contract and is entitled to his commissions. Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. 790. The fact that either party has refused subsequently to carry out the contract does not affect the right to the commissions which have already accrued. Knapp v. Wallace, 41 N. Y. 479; Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091. But the plaintiff does not stand upon the usual contract of a broker, and his rights are not to be fixed by the rules applicable to that contract. He alleges that he made a special contract with the defendant, which has been set out in the former part of this opinion, and by that contract his rights are fixed. That contract provides that the

remainder of his commissions of $24,000, after the payment of the $6,500 which he has already received, is to be paid when the contract with Samuel is fulfilled, and the remainder of the purchase money and bonds and mortgages received and the deed delivered, and, in the event of the transaction not being fulfilled, he waives all claim for further brokerage than $6,500. The same provision is substantially contained in the receipt which he signed at the time the $6,500 was paid to him. Under the terms of this agreement, before he can recover the remainder of his commissions he is bound to show that the contract between Samuel and St. Luke's Hospital was performed, or that performance was prevented by the defendant. Hinds v. Henry, 36 N. J. Law, 328; Young v. Hunter, 6 N. Y. 203; Walker v. Tirrell, 101 Mass. 257. By the terms of the contract of sale, the final performance was to have taken place on the 2d of January, 1895. It is conceded that on that day the defendant was ready to perform, and it has been determined that it had a good title, which it could convey. Berenbroick v. St. Luke's Hospital, 23 App. Div. 339, 48 N. Y. Supp. 363. But it appears, and is not disputed, that Samuel made no offer to perform on that day, nor, indeed, at any subsequent time, and after the 2d of January, when the performance was to have been made, he was by the terms of the contract in default. When that state of facts came to exist, the defendant had its choice either to bring an action against Samuel for specific performance of the contract, or to sue him for damages which it suffered by reason of his failure to perform, or to accept the act of Samuel as a forfeiture of the contract on his part. It was at liberty, so far as its own rights were concerned, to take any one of these courses which it deemed most expedient. It was under no obligation to Seymour to do any act whatever in the premises. Samuel had, by his failure to perform, forfeited his rights under the contract. The defendant had assumed no duty towards the plaintiff which required it to take any steps to compel the enforcement by Samuel of the agreement which he had made. It occupied towards him no position of confidence, but all that he could insist upon was that, if Samuel performed his contract, the defendant should be ready to perform its contract; and if that were done, or if the failure to do it occurred because of the neglect or the default of the defendant, Seymour had the right to the remainder of his commissions. But the defendant was not called upon, after Samuel had forfeited his rights under the contract, to commence any action or involve itself in any litigation to enforce the forfeited contract for the benefit of Seymour. The contract was at an end if the defendant saw fit to so regard it, and when it was at an end Seymour's rights to recover the remainder of his commission were gone. He had no interest in the contract itself. He had no right to compel the performance of it by Samuel. The contract being in this condition, it was canceled by mutual agreement of the parties on the · 26th day of January, 1895. The plaintiff claims that this cancellation put it out of the power of the defendant to perform its contract, and therefore his rights to his commissions had accrued.

But while the defendant at that time had the right to perform the contract if Samuel had been willing to do so, yet it could not perform it unless Samuel did, and Samuel having forfeited the contract, and thereby shown his intention not to carry it into effect, the defendant was at liberty to accept the forfeiture, because the only other thing it could do was to bring an action to compel Samuel to perform. All that was released by the cancellation was the right of the defendant to sue Samuel for his damages for failure to perform, and in that the plaintiff had no interest whatever, and he lost nothing by its release. No rights of Samuel were changed by this cancellation. He had no rights. As to him the contract was at an end already, if the defendant chose to consider it so, and therefore, in effect, so far as the right to enforce the contract was concerned, the cancellation amounted to nothing.

But it appears that on the 24th of October, 1894, while the contract was still in force, the defendant, at the request of Samuel, consented to modify it so that, instead of requiring the completion of the contract and delivering the deeds on the 2d of January, 1895, it agreed to accept a payment of $100,000 on that day, and postpone the final conveyance until the 1st of July, 1895. The plaintiff was asked to consent to this modification of the contract, but refused to do it, and he insists now that, because of the modification, the defendant had lost the power to carry the contract into effect on the 2d day of January, and therefore the failure to perform was its fault, and he does not lose his rights on account of it. But the defendant had not lost the power to perform on the 2d of January. It was perfectly able to carry the contract into effect on that day, and, if Mr. Samuel had offered on that day to do it, there is no doubt that the transaction would have been completed. The difficulty is that Samuel not only was not ready to perform the entire contract on that day, but he made a forfeiture as to the modified contract. If, after the modification, Samuel had paid the $100,000, but for some reason had become unable to perform the remainder of the contract on the 1st of July, 1895, a very different question would have arisen between the plaintiff and the defendant as to the payment of these commissions. But, as a matter of fact, Samuel forfeited the entire contract by his failure to perform that portion of it which he agreed to do as it was modified on the 2d of January. The extension of the time, while it was a modification of the contract, was one which caused no injury to the plaintiff, but rather tended to benefit him, because the indulgence to Samuel rendered it more likely that he would have been able to carry the entire contract into effect; and when, after the modification, he failed to make any effort to perform the contract as modified, his position with regard to it was precisely the same as it would have been had he failed to perform the whole contract, and entitle himself to a delivery of the deeds on the 2d of January, 1895. In each case the contract was at an end if the defendant chose to consider it so. The plaintiff surely can have no greater right to insist that the defendant violated its contract with Samuel to his hurt, because he forfeited the contract for his failure to perform a part of it on the 2d of January,

50 N.Y.S.—63

1895, than he would have done had he failed to perform the whole of it. It does not follow, nor is there any legal presumption, that, because he failed to pay $100,000 on the 2d of January, he would have paid $620,000 on that day had the defendant insisted upon it. But there was no such relation between the defendant and Seymour as to forbid it to make any reasonable change with regard to this contract, so long as the effect of it was not to put it out of the power of Samuel to perform it or increase his difficulty in performing it. It did not lose, because of its contract with Seymour, any right that it would have had to make such a reasonable modification of the terms of payment of the contract as would enable Samuel to carry it into effect. The only thing that it bound itself to do by its contract with Seymour was not to do any act which would put it out of its power to carry a contract into effect when Samuel should offer to perform it, and, if it continued able and ready to perform so long as Samuel desired the performance to be had or was willing to perform on his part, it did all that Seymour could require. The modification of the contract, therefore, did not affect the rights of the parties.

It is complained by the plaintiff that the case should have been sent to the jury, but a careful consideration of the evidence fails to show any disputed question of fact. Indeed, we are not able to discover that the plaintiff made any request to submit any question of fact to the jury. But it is quite likely that we have overlooked it in the 40-odd pages of desultory conversation which is at the end of the case, where the exceptions are usually made sharply to appear. We cannot refrain from expressing our regret that in a case of this importance, which turns solely upon questions of law, those questions should have been presented in a case so unscientifically made as this is. The reasons of counsel, which are presented to the court at the close of the trial upon motions, are frequently not uninteresting, but they have no place in a case and exceptions which are intended to present sharply to the appellate courts the points which are raised and the rulings that are made. The place for these arguments is in the briefs, and, if they had been put into the briefs, it would have rendered the task of the court much easier. No complaint is made as to the rulings of the court upon the admission or the rejection of evidence. Indeed, in view of the amendments which were made to the pleadings and the way in which the case was finally presented to the court, those questions were practically rendered of no importance.

Upon the whole case, we are quite clear that there is no error and the judgment should be affirmed, with costs. All concur.