ANNA S. FAUSETT, Appellant, *v.* LENA GUISEWHITE, Respondent.

Third Department, March 13, 1962.

*James L. Burke* for appellant.

*Garey & Keyser* (*Walter C. Garey* of counsel), for respondent.

BERGAN, P. J.   Almost a century ago Thomas S. Frost and his wife Lydia conveyed by deed to the trustees of School District No. 9 of the Town of Catlin in what is now Chemung County " a small lot out of the farm " which they then owned.

The deed provided that it " is made and accepted subject to the following conditions and reservations viz:   *   *   *   and whenever the property hereby conveyed shall cease to be used for school and meeting purposes by the inhabitants of said dis-

trict then and in that case the same shall revert to and become the property of the first part [*sic*]; upon such reversion said Frost agrees to pay said district the sum of $25 whenever the lands adjoining are enclosed ''. The deed was dated June 15, 1868 and recorded the following year.

Ten years later (1878) the grantors conveyed to Charles S. Frost their entire farm, which had been made up of several parcels, and they included in their deed by its general descriptive terms, the land which had been conveyed to the school district in 1868.

Deeds granting title to the property thus conveyed in 1878 to Charles S. Frost were executed from time to time without reference to the school district conveyance until in 1939 Arthur O. George and his wife Emma conveyed it to the Federal Farm Mortgage Corporation and this deed for the first time excepted and reserved the land which had been conveyed to the school district in 1868.

Through the mortgage corporation's grantees eventually a deed conveying title of the farm was given to plaintiff Anna A. Fausett on January 5, 1951, but it, too, recited the exception and reservation of the school lot which had first appeared in the mortgage corporation's deed in 1939. On June 16, 1954, John E. Frost and Charles H. Frost, who are described in the complaint as '' the distributees of '' Thomas and Lydia, the 1868 grantors to the school district, executed a deed to the plaintiff Fausett of the land which had been granted to the school district.

This last instrument recited: '' The purpose of this deed is to convey to the grantee any and all interest of the grantors in the foregoing described property resulting from the reservation and right of reverter retained by Thomas S. Frost and wife, the parents of the grantors, in said deed of 1868 ''.

School District No. 9 having been swept into a central school district, its school lot parcel ceased to be used for school and meeting purposes on September 10, 1953; and on July 18, 1955 the Central School District deeded it to the defendant Lena Guisewhite and her husband, now deceased.

The following year, February 21, 1956, Arthur George and his wife Emma conveyed the school lot by quitclaim deed to the defendant and her husband. It will be remembered that when Thomas S. Frost and his wife conveyed the farm in 1878 they did not except the school lot which they had conveyed 10 years before, and that all deeds subsequently were in the same terms, including that by which the Georges got title, until the Georges' deed of 1939 to the mortgage company, which expressly excepted the school lot.

The question presented is who now owns the former school lot. This action was instituted by the plaintiff in the Chemung County Court pursuant to article 15 of the Real Property Law to determine title. The County Court decided that defendant has title. We are of opinion the judgment is right.

The issue is determinable on analysis of what was the effect of the reservation of the grantors in the deed of 1868. Our view is that the reservation in the 1868 deed amounted to a " condition subsequent ", a term which, upon a rather considerable volume of decisional law, has been interpreted to mean a right that was personal to the grantors; that would descend to their heirs at law; but could not be assigned or transferred to any others; and would come to an end in any event by a conveyance either of the surrounding land of the original reserving grantors or by a conveyance by them of the subject land itself.

Other, and perhaps more accurate, labels have been conceived for the " condition subsequent ". The interest retained by such a grantor is referred to in Restatement, Property (§ 24 [1936]) as a " power of termination ", and there noted that it often is called a " right of entry ", but the *special note* to section 24 calls attention to the fact that it is not quite a right, but rather a power that is thus involved.

Simes, in Law of Future Interests (1936 ed., Vol. 1, § 159, p. 282), felt the term " power of termination " had the advantage of accuracy, but that tradition and long professional usage made it preferable to employ, as he did in his text, " right of entry for breach of condition ". It will lead to no further confusion, we think, if for the purpose of this case we use " condition subsequent ", a term which itself seems well enough understood by those who have employed it and by those who seek to find a more precise expression.

For the purposes of examining this case, the " condition subsequent " in legal theory and effect must be seen contrasted with a " possibility of reverter ", which is an interest retained by a grantor treated quite differently in theory and in effect from a " condition subsequent ", especially in respect of alienability.

The differential analyses in the decisions of the effective terms themselves and of the form of words in grants which bring them into being have been singularly confused. Simes prefers to use generally the term " possibility of reverter " to describe the interest retained by the grantor; and " determinable fee ", " in fee simple conditional " or " in determinable fee simple conditional " to describe, in such a transfer, the interest of the grantee (§ 177, p. 320); the Restatement to

describe that interest employs the term " An estate in fee simple determinable " (Property, § 44). The terms "condition in deed", or "fee upon special limitation" are sometimes used.

This type of interest retained by the grantor is considered in an important recent case by the Appellate Division, Fourth Department (*Nichols* v. *Haehn,* 8 A D 2d 405), the significance of which is treated in a comprehensive note (Future Interests: Alienability of Possibility of Reverter by Alan E. Shalov, 45 Cornell L. Q. 373).

The distinguishing element of a possibility of reverter is that the grantor retains a right to regain the fee upon the happening of an event; he regains it automatically; and following *Nichols* v. *Haehn,* the grantor's interest in the possibility of reverter is alienable by the grantor after, and perhaps before, the event occurs which determines the estate. (As to the operative theory, see Simes, *op. cit. supra,* ch. 11, Possibilities of Reverter; Restatement, Property, ch. 4; and Cornell L. Q., *supra,* Note, pp. 375–383.)

Whether there is to be an automatic end to the grantee's fee simple; or whether its end comes by re-entry of the grantor upon arising of the condition subsequent, the physical "re-entry" required by the common law having become by modern law symbolic, depends, as the Judges in many cases have said, on the intent of the grantor; and this, in turn, depends on the words in the deed.

" No precise words are required ", said ALLEN, J., writing for the General Term in *Underhill* v. *Saratoga & Washington R. R. Co.* (20 Barb. 455, 459–460) " to make a condition precedent or subsequent. * * * The same words have been construed both ways, and much has been made to depend on the order of time in which the conditions are to be performed. If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, or if from the nature of the act to be performed and the time required for its performance it is evidently the intention of the parties that the estate shall vest, and the grantee perform the act after taking possession, then the condition is subsequent." Judge ALLEN felt in the case before him that there " can be little doubt, I apprehend, that the provision in the deed was a condition subsequent." It was on this opinion that GRAY, J., was later to rest heavily in analyzing the question in *Upington* v. *Corrigan* (151 N. Y. 143, 151).

A characteristic of the type of expression which works automatic expiration of the grantee's fee seems to be one in which

time is an important factor. Such words as "until", "so long as" or "during" have commonly been given that effect. (See illustration in Restatement, Property, § 44, comment *l*, illus. 17.) "To revert when", or "when" are commonly the decisive words. The critical words in *Nichols* v. *Haehn* (*supra,* p. 407) were "in case said Railway shall at any time be abandoned then" the grantors should have title. "The typical words" notes Simes (*op. cit.,* p. 329) "are 'so long as' or 'until' or 'during.'"

The importantly different "condition subsequent" is created by fairly similar, but apparently sufficiently distinguishable words of condition attached to the grant. The "effective formulae" for the creation of a fee simple subject to a condition subsequent offered in the Restatement (§ 45, p. 139) are "upon express condition that" or "upon condition that" or "provided that" or some "phrase of like import" and also a provision that if the event occurs the conveyor may enter and terminate the estate. The latter condition, however, is often implicit rather than expressed in the deeds that have had actual judicial examination.

Simes uses these expressions as typical: "on condition that", "upon the express condition", "provided that", "but if" and "similar language" (*op. cit.* § 163, p. 290). He notes, too, that express words authorizing re-entry and termination are not essential.

The deed now before us stated that it is "made and accepted subject to the following conditions and reservations, viz: * * * and whenever the property hereby conveyed shall cease to be used" etc. The word "whenever" is used, but the dominating circumstance of the right reserved is in the words "subject to the * * * conditions and reservations" and this, on close analysis, leads us to the view that a condition subsequent was intended.

Once the conclusion is reached on an understanding of intent derived from words of conveyance that a condition subsequent has been created by the grantor, the cases in New York have held with marked consistency that the reservation is personal passing only by descent to the grantor's heirs, and not assignable. (*Vail* v. *Long Is. R. R. Co.,* 106 N. Y. 283; *Upington* v. *Corrigan, supra; Fowler* v. *Coates,* 201 N. Y. 257; *People* v. *Wainwright,* 237 N. Y. 407; *Southwick* v. *New York Christian Missionary Soc.,* 151 App. Div. 116, affd. 211 N. Y. 515; *Trustees of Calvary Presbyterian Church of Buffalo* v. *Putnam,* 221 App. Div. 502, affd. 249 N. Y. 111; *New Edgewood Lake Corp.* v.

*Kingston Trust Co.*, 246 App. Div. 163, 166, appeal dismissed 273 N. Y. 524.)

On the contrast " between a limitation and a condition " in common-law theory, the concurring opinion by Chief Judge GARDINER in *Nicoll* v. *New York & Erie R. R. Co.* (12 N. Y. 121, 139) is enlightening. That case is one of the leading early authorities in New York on what constitutes a " condition subsequent ". There the owner of a farm in Orange County had conveyed to a railroad corporation a strip of land through his farm " provided always and  *  *  *  upon the express condition that the company should construct its railroad " within a stated time. The railroad was not constructed within that time, or at any time before the suit was started, and the railroad company which had taken the grant transferred its title to the defendant railroad. The grantor in the meantime transferred title to the farm to plaintiff. On the question of who had title to the disputed strip, the court held for the defendant railroad.

The court was of opinion the reservation was a true " condition subsequent ". AMASA J. PARKER, J., noted that the question is basically one of the intention of the grantor; and this must be taken from the language of the deed. " The fee vested at once," he said, " subject to being divested on a failure to perform the condition. This is apparent from the language employed in the grant and from the character of the transaction " (p. 130). " The grant is not made ", he continued (p. 131), " to take effect on the happening of a certain event, but *in presenti*, and liable to be divested by the grantee's failure to perform the condition ".

But such a condition, the court ruled, is entirely a personal and nonassignable one. On the authority of both Kent and Blackstone, Judge PARKER stated flatly that the reservation which creates a condition subsequent " can only be reserved for the benefit of the grantor and his heirs, and no others can take advantage of a breach of them. (4 *Kent Com.*, 122, 127; 2 *Black. Com.*, 154.) "

The cases in which such rights have been enforced demonstrate the scope of the rule. In *Trustees of Union Coll.* v. *City of New York* (173 N. Y. 38), for example, the plaintiff had given the city a deed with the condition that a city hall be erected on the land. The failure to conform with the condition after 10 years was found to be a sufficient breach of the condition to invoke the right to enforce the condition by the trustees — themselves the grantors — was directed.

The deed by the Town of Gravesend to the Coney Island Fire Department, containing the clause, which the court (*City of*

*New York* v. *Coney Is. Fire Dept.*, 259 App. Div. 286, affd. 285 N. Y. 535), construed to be a condition subsequent, that the land should be used for fire purposes " and for no other purpose whatever " was held to authorize a right to re-enter by the town's statutory successor, the City of New York.

It would seem to follow from all this, therefore, that the provision in the deed here under examination being a condition subsequent, the personal right to invoke the condition, even if it had not otherwise been lost by the action of the original grantors themselves, was lost when their distributees John E. Frost and Charles H. Frost conveyed their interests to the plaintiff by the quitclaim deed of June 16, 1954 because it is clear that the right could not be thus conveyed or assigned.

It is true that the abandonment of the school and meeting purpose of the lot had by then occurred (1953); and although there is a suggestion in some of the cases that the right of re-entry of the heirs (now denominated distributees) then occurred, and, if exercised, might then be assigned, we hold that in the situation presented in this case the right to invoke the condition subsequent continued to be personal in the distributees and not assignable to the plaintiff before or after the occurrence of the condition (*Fowler* v. *Coates, supra*).

This, indeed, seems the general practice. (See 26 C. J. S., Deeds, § 148, p. 1054.) It is there noted that " it appears to be the prevailing rule that the grantor's right either before or after condition broken will not pass to his transferee or assignee ".

There are deep crosscurrents of policy on the issue of alienability of rights to invoke conditions subsequent, and even as to the grantor's interest in the possibility of reverter which *Nichols* v. *Haehn* (*supra*) held alienable. Contingent estates of these types were generally inalienable at common law and the rule against alienation of the possibility of reverter has been called so " anachronistic " as to be a " throwback ". (2 Powell, Real Property [1950], ¶ 281, p. 482, n. 13.)

There is, of course, a strong modern trend in favor of a full right to alienate future interests. But there is, too, a policy of large public importance running against the clouding of real estate titles with such vague and long-lived uncertainties as these interests and their exercise suggest; and the contrivance of a strict rule against alienability of right to invoke the condition subsequent embedded in many decided cases works to the same beneficial end by killing them off in due course or discouraging their exercise.

Conceivably several centuries, rather than one, could go by until the day when numerous distributees of a grantor could assert a right of re-entry and of forfeiture on breach of a condition subsequent. The rule preventing assignment of this personal right by the grantor or his distributees was a rule designed to circumscribe it and cut it off. The provisions of section 59 of the Real Property Law might on their face seem to allow alienation of such an interest or power; but long ago it was flatly held that they did not (*Upington* v. *Corrigan, supra,* p. 149).

Finally, it would seem to be the rule that when the original grantors by their deed of 1878 conveyed all the rest of the farm to Charles S. Frost they terminated their own right to invoke the condition subsequent, and that of their heirs as well. As BALCOM, J., noted in his opinion at General Term in *Tinkham* v. *Erie Ry. Co.* (53 Barb. 393, 396) '' the condition is gone ''. This would be true especially since the deed of 1878 included the very lot on which the reservation was held. (*Berenbroick* v. *St. Luke's Hosp.*, 23 App. Div. 339, appeal dismissed 155 N. Y. 655.) Thus on the record in this case the distributees who made the 1954 deed to the plaintiff had then no interest in the condition subsequent and the plaintiff has otherwise not demonstrated such a right.

The judgment should be affirmed, with costs.

COON, HERLIHY, REYNOLDS and TAYLOR, JJ., concur.

Judgment affirmed, with costs.