*597 OPINION OF THE COURT
Frank S. Rossetti, J.
Motion by claimant for partial summary judgment (CPLR 3212 [e])[1] granted in part and denied in part, in accordance with the following.
In this appropriation claim, claimant moves to have a title question determined, to wit, title to land under water adjacent to upland owned by claimant and appropriated by the State. Mr. Turiano claims title to such underwater land under a grant from the State pursuant to article 6 of the Public Lands Law. This grant was subject to a condition, but claimant contends it was a condition subsequent which became void upon the vesting of title in the State under the subject appropriation. The State argues the condition was a condition precedent which was never fulfilled and therefore title never vested in claimant. On the limited question presented, we find the subject grant conveyed claimant a fee on condition subsequent to the underwater land and he retained at least that title up to the time of the claimed appropriation.
Prior to 1969, claimant and his brother[2] owned property bordering on tidal waters and wetlands of Great Neck Bay off Long Island. Claimant’s property was located just inside the City of New York line, in the Borough and County of Queens. Claimant wanted to improve the property with mooring and docking facilities and he applied to the State Commissioner of General Services for a grant to the underwater land adjacent to his upland (see, Public Lands Law § 10; 9 NYCRR part 270). The application was made for claimant’s "beneficial enjoyment” of the land (see, Public Lands Law § 75 [7]; 3 Warren’s Weed, New York Real Property, Land Under Water § 3.04) and a hearing was held October 29, 1968 because of an adverse claim by the City of New York (see, 9 NYCRR 270.8, 270.9; 3 Warren’s Weed, dp. cit., § 4.05 [3] [d]). However, the city defaulted at the hearing and the State Attorney-General issued a report November 20, 1968 advising that the applied-for grant could be made. Accordingly, on July 1, 1969, the *598 following grant or letters patent (see, Public Lands Law § 5) issued:
"The People of the State of New York * * * pursuant to Article 6 of the Public Lands Law and Findings of the Deputy Commissioner of General Services dated July 1, 1969 and in consideration of the sum of Thirty Eight Thousand Six Hundred Seven Dollars ($38,607.00) * * * we have given and granted and by these presents do give and grant unto the said CHARLES TURIANO AND VINCENT TURIANO, the Owners of the land adjacent to the land hereinafter described, their heirs and assigns forever, the following described lands under water to wit * * *
"These letters-patent are issued, however, and this grant is made and accepted:
"Upon the express condition that if at the end of five years from the date of these presents or at anytime thereafter, any part of said land hereby granted is not improved as follows: by filling and construction of boat docking facilities except that a channel 20 feet wide adjacent to the westerly or outward boundaries of Parcel 'A’ herein shall be maintained and kept open at all times.
"Then these letters-patent and this grant shall become null and void as to the part not so improved; and no right, title or interest in and to the land hereinabove described not so improved shall vest in the said patentee or accure [sic] by virtue of these presents; and The People of the State of New York may thereupon reenter into and become possessed of the land hereinabove described or any part thereof which has not been or which is not then so improved without any liability.
"There is reserved to the said People the full and free right, liberty and privilege of entering upon and using all and every part of the above described land which has not been improved as aforesaid, as the said People might have done had this grant not been made.”
Based on plans prepared September 21, 1971, claimant applied to the New York City Department of Ports and Terminals for a work permit. However, contemporaneously the city was proceeding with plans to map as a park an area which encompassed claimant’s upland and the subject underwater lands (i.e., Udall’s Cove Park). A map covering that area drawn September 6, 1972 was approved by the city Board of Estimate in a solution dated December 7, 1972. The resolution stated in part that "Mapping of the Park will preclude any *599 further land-fill and building operations, which have already begun in the area, and will conserve the marshland for fish and wild life and possibly for boating and water.” By letter dated December 15, 1972, the general counsel of the Economic Development Administration of the City Department of Ports and Terminals rejected claimant’s permit request on the basis of said resolution. Then, on September 1, 1973, the Tidal Wetlands Act became effective and it imposed a moratorium on development of the subject lands. (See, ECL 25-0103 [1]; 25-0202; L 1973, ch 790, § 5; see generally, 6 NYCRR parts 660, 661.)
In the face of these developments, on April 3, 1974, claimant applied to the Commissioner of General Services for an extension of time to comply with the grant’s improvement condition (see, Public Lands Law § 14 [1]). On May 28, 1974 the Commissioner granted an extension to July 1, 1977. Then, by petition dated April 14, 1975, claimant commenced a proceeding against the City of New York in Supreme Court (Queens County) to declare a de facto taking or direct that a work permit be issued. Because of alleged city plans to condemn the subject lands, and subsequent events, this proceeding allegedly never came to final determination. One of the subsequent events was the State became involved in acquiring the properties and informed claimant of its interest September 27, 1977. By letter dated May 5, 1978, the State Department of Environmental Conservation confirmed its acquisition interest and notified claimant said interest was sufficient to warrant denial of a wetlands permit under the Environmental Conservation Law (i.e., ECL 25-0403 [2]; see also, 6 NYCRR 661.10 [d]), although it did note such would be effective for only two years after said initial State interest. The record discloses no further activity until the preparation of an appropriation map by the State Department of Environmental Conservation April 1, 1982 (see, ECL 3-0305 [1], [2]). That map was filed with said Department February 22, 1982 (see, ECL 3-0305 [3]; EDPL 402 [A] [1]) and apparently filed with the Queens County Clerk February 29, 1984 (the claimed date of vesting — see, EDPL 402 [A] [3]).
The State’s authority to make grants of land under water derives from its ownership of these lands as sovereign. (See generally, Public Lands Law § 4; 3 Warren’s Weed, op. cit., §§2.01, 3.01, 3.03, 6.02 [2]; §6.04 [2].) Prior to 1850 these grants were restricted to commercial uses (at least when made to nongovernmental entities — see, Public Lands Law § 75 [7], *600 [10]), but, in the interest of promoting development of waterfront property, the Legislature then allowed such grants to be made for the beneficial use of upland owners (see, Public Lands Law § 75 [7]; 3 Warren’s Weed, op. cit., §§ 3.03, 6.05 [2]). These were construed by the courts to be essentially unrestricted grants and hence were deemed in fee. (See generally, People v Steeplechase Park Co., 218 NY 459, 472, 479-480; 3 Warren’s Weed, op. cit., § 3.04.) Of course, the Legislature also contemplated the imposition of conditions on these grants (see, Public Lands Law §§ 14, 78), but historically these conditions have been held conditions subsequent. (See, New York Found. v People, 259 NY 54, 57, 59, and cases cited; Matter of Benedict v Lunn, 244 NY 373, 380-381; Archibald v New York Cent. & Hudson Riv. R. R. Co., 157 NY 574, 577.) The State contends these cases are not controlling because of certain language in the subject grant not present in previous ones. Nonetheless, we find that proper interpretation of the grant in its entirety (see, e.g., 1A Warren’s Weed, op. cit., Construction § 1.06) does not support defendant’s construction.
The essence of the State’s position is that the subject grant conveyed a future estate (see, EPTL 6-3.1, 6-4.2), to wit, a fee on condition precedent (see, EPTL 6-1.1 [a] [2]; 6-4.10; see generally, 56 NY Jur 2d, Estates, Powers & Restraints on Alienation, § 21). Claimant’s position is that an estate in possession was conveyed (see, EPTL 6-3.1, 6-4.1), to wit, a fee on condition subsequent (see, EPTL 6-1.1 [a] [2]).[3] By statute, a grantor is presumed to convey its entire interest unless the contrary is expressly provided by or necessarily implied from the terms of the grant. (See, Real Property Law § 245; Fowler v Coates, 201 NY 257, 262-263; Nicoll v New-York & Erie R. R. Co., 12 NY 121, 128, 129.) It is a public policy of the law to promote the certainty and transferability of land titles and *601 this is reflected in the general legal rule of construction that present vesting of estates is preferred to delayed vesting. (See generally, Glasser, 1984 Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-4.9, 1987 Pocket Part, at 37; 1A Warren’s Weed, op cit., Conditions & Limitations § 4.03; 43 NY Jur 2d, Deeds, § 236; 56 NY Jur 2d, op. cit.; § 510.) Case law has held that where possession and control are necessary to meet a condition in a grant, title will be deemed to vest in the grantee at once because otherwise he would be without right to possess and improve the property to fulfill the condition. (See, Munro v Syracuse, Lake Shore & N. R. R. Co., 200 NY 224, 231; Nicoll v New-York & Erie R. R. Co., supra, at 130-131; New Edgewood Lake Corp. v Kingston Trust Co., 246 App Div 163, 167.) In this area there are no magic formulae (see, Nicoll v New-York & Erie R. R. Co., supra, at 130; Fausett v Guisewhite, 16 AD2d 82, 86; Glasser, op. cit.; 56 NY Jur 2d, op. cit., § 24), but use of the words "give and grant” and "heirs and assigns forever” is indicative of an intent to make a present conveyance (see generally, Matter of City of New York [Upper N. Y. Bay], 246 NY 1, 13-22; 1A Warren’s Weed, op. cit., Deeds §§ 6.01, 6.02, 8.02).
Further, in accord with the above-noted rule of present vesting, restrictions on a fee have to be clear (see, 56 NY Jur 2d, op. cit., § 510). A condition precedent should thus not be found unless clearly specified (see, 1A Warren’s Weed, op. cit., Conditions & Limitations § 6.01) and between it and a condition subsequent, the latter is preferred (see, e.g., id., § 4.03; 56 NY Jur 2d, op. cit., § 28, at 54). Consistent with the general rule that all terms of an instrument be construed to the extent possible (see, 1A Warren’s Weed, op. cit., Construction § 1.06; 43 NY Jur 2d, op. cit., §§ 235, 239), a condition precedent is not indicated where additional words are present, especially words of right of reentry (cf., 56 NY Jur 2d, op. cit., § 22). On the other hand, a right of reentry (or right of reacquisition — see, EPTL 6-4.6) is the clearest indicia of a condition subsequent (see, Munro v Syracuse, Lake Shore & N. R. R. Co., supra) and language such as "upon the express condition” is typical thereof. (See, Fausett v Guisewhite, supra, at 87; 56 NY Jur 2d, op. cit, §§ 26, 27; Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-4.6, at 84-85.)
It is also consistent with the nature of a condition subsequent to find one where continuous action is necessary for fulfillment of the condition. (See, 56 NY Jur 2d, op. cit., § 28, *602 at 55.) Here, claimant would have had to maintain the planned mooring and docking to stay in compliance with the condition if he had been allowed to initially construct them. If at anytime after the five years specified in the grant (as extended to eight years — see, at 599, supra) claimant had failed to maintain such facilities on even just a part of the subject underwater land, the State technically could have claimed a right of reacquisition as to such part.[4] Thus, fulfillment of the condition did not create or enlarge claimant’s estate since he practically had the equivalent of a full fee for the first five and then eight years of his grant. Rather, it only provided for divestiture of the grant, in toto or pro tanto, after that time (and after court action — see, RPAPL 1953; cf., New York Found. v People, supra, at 59). (See generally, Munro v Syracuse, Lake Shore & N. R. R. Co., supra; cf., 56 NY Jur 2d, op. cit., § 21, at 44.)
As to the added language the State claims changes everything, we agree with claimant that it is only an amplification of the divestiture that would result if such were effected. It merely spells out a consequence of the grant becoming void, to wit, claimant’s loss of any rights he might claim thereunder. While arguably unnecessary (particularly in light of RPAPL 1953 — see, n 4, supra), said language certainly is consistent with a condition subsequent, not nugatory thereof. The State was the author of the grant and thus should have specified a condition precedent if that was its intent. (See, 1A Warren’s Weed, op. cit., Construction § 1.15; 43 NY Jur 2d, op. cit., § 237.) It did not and we find a condition subsequent more closely concordant with the expressed intent of the parties and the purpose of the subject letters than a condition precedent.
As indicated by the State’s own title report, the letters patent consisted of a grant subject to a condition and a reservation. As found, first there was a present fee grant. Then there was a condition that if any part of the underwater land granted was not improved as specified in five years, or such improvement was not thereafter maintained, then the grant would become void, claimant would have no rights under the grant and the State would have a right of reentry.[5] *603 Lastly, there was a reservation which reserved to the People the right to enter and use as before the grant those underwater lands not improved or maintained as specified.
Construed as a fee on condition subsequent, claimant’s grant first vested title in him, but then the condition required him to improve the property as specified in five years (later eight — see, at 599, supra). If at the end of that time he had not improved substantially all that had been specified, or if "at anytime thereafter” he failed to maintain a substantial part the improvements made, then the State had the right to have title revested in it, either in toto (if claimant’s breach was substantial enough) or as to the lands not improved or maintained (see generally, 56 NY Jur 2d, op. cit., § 32; n 5, supra). Finally, in addition to the State’s right of revestment under the condition (and seemingly irrespective of whether the State chose to enforce that right — see, Public Lands Law § 78), the reservation reserved to the State the right of entry and use so the public could use those underwater lands not improved or maintained as it had before the grant, albeit the reservation (like the condition) could not come into operation until the expiration of claimant’s eight years or "thereafter”. (See generally, 43 NY Jur 2d, op. cit., §§ 78, 82, 87.) For example, had claimant built the dock and bulkhead planned but only half the mooring facilities, then the underwater land devoid of such facilities would have been free for public use at the end of said eight years. We think these practical consequences reasonable and consistent with the letters’ purpose and the parties’ evident intent. (See, e.g, 1A Warren’s Weed, op. cit., Construction § 1.09.) We thus find the subject grant conveyed a fee on condition subsequent.
This finding, and RPAPL 1953, dictate the conclusion on this motion. The State brought no action under said statute prior to the alleged appropriation of the underwater lands* ****[6] and thus title remained in claimant up to that time. (See, *604 RPAPL 1953.) Mr. Turiano contends the conduct of the city and State after the grant resulted in an impossibility of performance which voided the condition. (See generally, Fowler v Coates, 201 NY 257, 263, supra; 56 NY Jur 2d, op. cit., §§ 32, 33.) However, we do not find that claimant’s papers resolve all the factual issues involved in this contention (see, n 6, infra). Rather, at this point in the proceedings and on this motion, we believe the record is inadequate to permit the court to find other than that the grant as made was a fee subject to condition subsequent and up to the alleged date of State appropriation claimant retained at least that title. Correlatively, we do not consider the record sufficient to allow a complete determination of any effect of the applicable Statute of Limitations, except there is sufficient proof to permit the court to find (see, e.g., 1A Warren’s Weed, op. cit., Construction § 1.03) that the grant, as extended by the State, by its terms precluded any possible breach of the condition until after July 1, 1977 (see, CPLR 3212 [g]). The time limitation of RPAPL 612 would thus appear to run from then, at the earliest, but any effect such may have on the valuation of claimant’s property is presently unclear on the limited facts at bar. The same may be said as to other issues raised.
Accordingly, the court finds the subject grant conveyed to claimant a fee on condition subsequent and there was no diminution or divesting of that estate up to the time of the claimed appropriation. We also find that any breach of the condition could not occur until after July 1, 1977. The parties are directed to file their appraisals by February 1, 1988.

. Defendant refers to a cross motion, but no notice of cross motion was submitted by the State (see, CPLR 2215; Matter of Briger, 95 AD2d 887, 888), albeit the court could grant defendant relief on this motion (see, CPLR 3212 M).

. Said brother has since died and claimant has allegedly succeeded to his interest. All references herein shall thus be in terms of the present claimant.

. A third possibility is a fee on special limitation, wherein fee title is vested in the grantee immediately, but it is a fee subject to automatic divestiture (see, EPTL 6-1.1 [a] [3]). Of course, where land use is concerned, this estate (as well as a fee on condition subsequent) is subject to the statutory requirement that a legal action be commenced to effect divesting of the grantee’s title. (See, RPAPL 1953; 1A Warren’s Weed, New York Real Property, Conditions & Limitations §§ 1.05, 14.) Hence, the automatic divestiture of a fee on special limitation is no longer automatic to the extent land use is involved. Said statute would thus seem to minimize the importance of the distinctions between a special limitation and a condition subsequent (and their respective possibility of reverter and right of reacquisition — see, EPTL 6-1.1 [a] [2], [3]; 6-4.5, 6-4.6) as far as land use is concerned. In any event, we believe a condition subsequent is what is clearly supported here.

. Of course, under RPAPL 1953, only substantial breach of the condition would warrant actual court divestiture, even pro tanto. (See generally, 56 NY Jur 2d, Estates, Powers & Restraints on Alienation, § 190.)

. To whatever extent the language of voiding the grant and claimant’s *603 rights implies an immediate or automatic divestiture on breach, such is modified by statute. (See, RPAPL 1953; n 4.) The nature of the divesting to be effected (i.e., total) is spelled out by these phrases, but the time of any divestiture is set by the right of reentry and said statute. Thus, assuming court approval, defendant could theoretically have obtained the total divestiture specified by said phrases, but such would have been effective only as of the date of court approval.

. Claimant contends the subject underwater lands were appropriated with his upland February 29, 1984, but the appropriation map annexed to the claim does not purport to take the underwater lands, only claimant’s upland. Instead, the map indicates the State’s belief that it had title to the *604 lands. Of course, other circumstances may support an appropriation, de jure or de facto, and, in any event, the appropriation of claimant’s upland would seemingly deny access to his underwater lands. This could call for consequential damages comparable to those awardable for an actual appropriation. Even if the condition were not deemed voided by the appropriation as far as valuation is concerned (but see, 1A Warren’s Weed, New York Real Property, Conditions & Limitations §§ 5.04, 8.06; cf., Carter v New York Cent. R. R. Co., 273 App Div 884 [dissent], affd 298 NY 540), claimant seemingly would still be entitled to at least a valuation based on a fee subject to the condition (cf., Matter of City of New York [North Conduit Ave.], 262 App Div 70, 72). Whatever the case, as noted, the determination here is limited to title. Questions of valuation and damage must await fuller exposition of the facts and thus, while we find the claimed date of appropriation proffered by claimant useful for purposes of reference on this motion, we make no legal determination thereon.