VALENTINE LUMBER & SUPPLY COMPANY *vs.* ADRIAN R. THIBEAULT & others.

Hampden.    September 22, 1955. — December 14, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Mechanic's Lien. Payment. Equity Pleading and Practice,* Master: findings.

A general finding by a master is controlled by an inconsistent specific finding. [363]

Certain payments which were made to one who had furnished materials to a builder in the construction of a house and which were intended to be applied against items covered by a subcontractor's lien established by the materialman under G. L. (Ter. Ed.) c. 254, § 4, could not properly be applied by him otherwise and omitted as credits in the statement of account recorded by him under § 8, and, being in an amount greater than the items covered by the lien as set forth in the statement, wiped out the lien and required dismissal of the bill as against the landowner in a suit by the materialman to enforce the lien. [364]

BILL IN EQUITY, filed in the Superior Court on December 12, 1951.

The suit was heard by *Cahill,* J., on a master's report.

*Justin F. Hoar,* for the defendants Giannetti.

*Charles D. Sloan,* for the plaintiff, submitted a brief.

QUA, C.J.    This is a bill in equity to establish a subcontractor's lien in favor of the plaintiff, hereinafter called Valentine, for materials furnished to the defendant Thibeault, the principal contractor, for the construction of a house for $14,700 on land of the defendants Gerardo and Antonnetta Giannetti situated in Springfield. The lien is sought under G. L. (Ter. Ed.) c. 254, § 4, and not under §§ 1 to 3. No exceptions were taken to the report of a master, which was confirmed without appeal. The Giannettis do appeal from the final decree establishing the lien in the amount of $2,660.85 as found by the master, which

with interest made a total of $3,189.82. Thibeault has not appealed.

Both parties in their briefs have indulged in statements not contained in the record. We shall endeavor to follow the record exactly, whatever the consequences to either side.

The principal contract between Thibeault and the Giannettis was signed May 7, 1951. The subcontract between Thibeault and Valentine was signed May 10, 1951. Notice of the subcontract was recorded on May 18, and the "actual notice to the owner" of such recording required by § 4 was received by the Giannettis on May 22 enclosed in a registered letter mailed to them.

From time to time during the progress of the work "Giannetti" made payments on account of the contract price of the house and on these occasions Valentine executed and delivered, or caused to be delivered, to "Giannetti" a paper entitled "Subordination of Lien." [1] All of these "subordinations" were worded alike except that the amounts mentioned in them were cumulative, so that the amount named in each was equivalent to the total sum paid on the principal contract up to the time when that "subordination" was given. The first "subordination," which is typical of all of them, read as follows, omitting the description of the land:

"For the purpose of enabling Gerardo Giannetti and Antonnetta Giannetti, to make payment on a contract with A. Robert Thibeault, in the amount of $14,700 for the construction of a home located on land in Springfield . . . and in consideration of making of such payment, the Valentine Lumber & Supply Co., lienor, hereby consents that $5,800 of the principal amount, thereof, shall take precedence of any present or future lien or claim of the lienor against said real estate; said lienor not hereby relinquishing any claim or lien it may have over and above the $5,800 above mentioned, or against said owners personally, under and by virtue of a notice of contract dated May 18, 1951, and re-

---

[1] The first "subordination" referred to the first two payments taken together.

corded . . . ." This was signed, sealed, and acknowledged by Valentine and was recorded.

The meaning of this "subordination" and of the others in similar form is not clear and need not be determined except as to their effect upon the application of payments to which we shall refer in a moment.

Valentine insists that the general findings of the master that the "total amount due for materials furnished to this job, after all just credits," was $2,660.85, and that the recorded statement in that amount was a "just and true account of the amount due" are finally decisive and end all inquiry as to the correctness of any part of the account. It may be noted that neither of these findings is quite equivalent to a finding that $2,660.85 represents only items furnished after May 22, 1951, when "actual notice to the owner" of the recording of the notice of contract was given. § 4. But passing this, we cannot agree that the general findings are decisive where they are qualified or controlled by more specific findings inconsistent with them. *MacLeod v. Davis*, 290 Mass. 335, 337–338. There are such specific findings in this case. We must start with the assumption that the sworn statement of the account annexed to Valentine's bill as "Exhibit 'C' " is a correct copy of the statement recorded by Valentine in accordance with § 8. Valentine so alleges in its bill, and it is bound by its allegations. G. L. (Ter. Ed.) c. 231, § 87. *Kneeland v. Bernardi*, 317 Mass. 517, 519–520. *Caggiano v. Marchegiano*, 327 Mass. 574, 581. It also, according to the natural meaning of the words it uses, alleges in substance that the statement shows the charges and credits on its contract with Thibeault. This is an allegation that the statement contains the items of all of the materials furnished during the period during which the lien could attach. For us to assume that additional items were furnished during the lien period and not included in the statement would be pure speculation and contrary to the natural meaning of Valentine's allegations. It appears from the master's report that on September 6 "Giannetti," in effect, made a payment to Valentine

of $2,200 and on September 19 made a further such payment of $800. Each of these payments was associated with a "Subordination of Lien" in the form to which we have hereinbefore referred. It is therefore evident that each of these payments was intended to be applied against items for which Valentine could claim under its lien. The recorded statement makes no mention at all of these payments. Valentine had no right to apply these payments to materials furnished before the actual notice on May 22 of the recording of the notice of contract, if that is what Valentine did, or to make any other application of them than to reduce the amount due it for items furnished for the Giannetti house after May 22. As the case stands on the record before us, the absence of any credits for these items in the lien statement as recorded, together with the master's finding in favor of Valentine for exactly the balance shown by the recorded statement, proves that these payments have not been applied to reduce the lienable items as they should have been. *Sexton* v. *Weaver*, 141 Mass. 273, cited by Valentine, is not in conflict with anything here decided.

The credits totaling $3,000 paid to Valentine but not allowed to the Giannettis are sufficient to wipe out the lien. The decree must be reversed and a new final decree entered dismissing the bill as to the Giannettis with costs of appeal against Valentine, and containing an order for the payment by Thibeault to Valentine of $2,660.85 and interest from the filing of the bill, calculated with a rest at the date of the master's report and without costs of appeal.

*So ordered.*