VALENTINE LUMBER & SUPPLY COMPANY *vs.* ADRIAN R. THIBEAULT & others.

Hampden.     September 25, 1957. — December 4, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Mechanic's Lien.    Payment.*

A subcontractor who furnished materials to a builder for the construction of a house could not have a subcontractor's lien under G. L. (Ter. Ed.) c. 254, § 4, for the amount of materials furnished on the day when he recorded a notice of his subcontract where actual notice of the recording was not given to the owner until the next day. [409]

A payment by a landowner on a building contract by a check payable to both the builder and one having a subcontractor's lien on the property under G. L. (Ter. Ed.) c. 254, § 4, for materials furnished to the builder was intended to be and constituted a payment to the materialman to be applied against items covered by his lien even though, after indorsement of the check by both payees, the builder kept the proceeds and, under the terms of the subcontract between the builder and the materialman, the sums owed to the materialman were not payable at the time of delivery of the check. [410]

BILL IN EQUITY, filled in the Superior Court on April 24, 1952.

The plaintiff appealed from a final decree by *Hudson, J.*, after hearing on a master's report.

*Charles D. Sloan,* (*Samuel L. Thompson* with him,) for the plaintiff.

*Isidore Gelin,* for the defendants Gilman.

SPALDING, J.   This is a bill in equity to enforce a lien of a subcontractor under G. L. (Ter. Ed.) c. 254, § 4.

The case was referred to a master, whose report was confirmed by an interlocutory decree.   A summary of the pertinent findings is as follows: On September 4, 1951, the defendant Thibeault entered into a contract with the defendants Nathan and Fanny Gilman for the construction of a house on land of the Gilmans on Biltmore Street, Spring-

field. Under the contract payments were to be made to the contractor in fixed amounts as the work progressed.

On September 14, 1951, Thibeault entered into a subcontract with the plaintiff, hereinafter called Valentine, whereby Valentine was to supply materials for the construction of the Gilman house. Under this contract payments were to be made by Thibeault to Valentine for materials purchased "within thirty (30) days from the first of the month following purchase." There was "no evidence . . . [that] the Gilmans knew of the terms of this contract."

On September 14, 1951, Valentine sent a letter to the Gilmans stating that it had recorded a notice of the contract with Thibeault. The notice in fact had not been recorded. On September 17 Valentine recorded the notice of contract and so informed the Gilmans by a letter which they received on September 18. The furnishing of materials under the Valentine-Thibeault contract was begun on September 17, 1951, with a delivery valued at $431.44.

The Gilmans made the first payment on their contract with Thibeault on September 19, 1951, by a check in the amount of $1,551 drawn to the order of both Thibeault and Valentine. Both Valentine and Thibeault indorsed the check and Thibeault kept the proceeds. The Gilmans made their second payment under the principal contract on September 27, 1951, by a check in the amount of $2,068 drawn to both Thibeault and Valentine. This check was indorsed by both payees and the proceeds were applied for Thibeault's benefit.

On November 14 the Gilmans made a third payment under the principal contract in the amount of $2,585. At Thibeault's request the sum of $1,090 was paid by checks payable to Thibeault and subcontractors. The balance of $1,495 was paid by a check to the order of Thibeault and Valentine. Both indorsed the check and Valentine kept the proceeds.

The principal contract called for the completion of the house on December 1, 1951, but on November 28 the completion date was extended by the parties to February 1,

1952. On the same day the subcontract between Thibeault and Valentine was likewise extended to February 1, 1952, and notice of the extension was recorded on the following day.

On February 28, 1952, Valentine recorded a statement of the amount due. (See G. L. [Ter. Ed.] c. 254, § 8.) This amount, which was found to be just and true, is $1,737.93. The master found that Valentine had a lien in this amount, but that if the item of $431.44 for materials furnished on September 17, 1951, is to be excluded then the lien should be reduced to $1,306.49.

A final decree was entered establishing that Thibeault owed Valentine the sum of $1,739.93 and interest, or a total of $2,176.30, and ordering the bill to be dismissed as against the Gilmans. Valentine appealed.

The amount claimed is $1,737.93 but this includes the sum of $431.44 for materials furnished on September 17, 1951. Under G. L. (Ter. Ed.) c. 254, § 4, "Upon filing a notice . . . and giving actual notice to the owner of such filing, the sub-contractor shall have a lien to secure the payment of all labor and material, which he shall thereafter furnish . . . ." The notice here was filed on September 17 but actual notice of the filing was not given to the Gilmans until September 18. Obviously there could be no lien for materials furnished on the 17th. *Prunier* v. *Schulman*, 261 Mass. 417, 418. The amount claimed, therefore, must be reduced by the value of those materials ($431.44) to $1,306.49.

Our decision on whether Valentine has a lien for $1,306.49 turns on the application of two checks of the Gilmans (one on September 19, 1951, and the other on September 27, 1951) made to the order of Thibeault and Valentine. The third check dated November 14 need not concern us because Valentine received the proceeds and credited them in its statement of the amount due.

Where payments made by a property owner to a subcontractor were intended to be applied against items for which the subcontractor could claim under his lien, the subcontractor has no right to apply these payments to other

items. *Valentine Lumber & Supply Co.* v. *Thibeault,* 333 Mass. 361, 364. There were deliveries by Valentine prior to each of the payments here involved from which in the aggregate a lien at least to the extent of $1,306.49 could arise. Valentine's lien must fail, therefore, if the two checks of September 19 and September 27 payable to Valentine and Thibeault were made by the Gilmans with the intent that they be applied to the items under which Valentine claimed a lien and did in law constitute payments.

We think that the findings of the master show that when the Gilmans turned over to Thibeault the checks payable to Thibeault and Valentine it was their intent that these sums be applied to reduce the lien. The Gilmans had no contractual relations with Valentine and the only purpose in making Valentine one of the payees was to make certain that Valentine would be paid, thereby reducing any lien that Valentine might have on their property. We think that Valentine must have understood what the Gilmans were seeking to accomplish.

We are of opinion that the checks in question constituted payment to Valentine. The method of payment gave notice to Valentine that it was expected to take any money due it out of the proceeds. The checks were drawn against sufficient funds and were honored when presented. They could not be cashed without Valentine's indorsement. If Valentine saw fit to indorse them and turn them over to Thibeault without taking out its share, it cannot later be heard to say that it has not been paid; it is bound to reflect those payments in the statement of account, and if this is done the lien is wiped out. See *Edwards* v. *Curry,* 152 Cal. App. 770, 774.

The fact that under the Thibeault-Valentine contract, the sums owed Valentine were not payable when the Gilmans' checks were delivered, contrary to Valentine's contention, does not affect this conclusion. The Gilmans were not parties to that agreement and were not bound by it.

*Decree affirmed with costs*
*of appeal.*