PROVINCETOWN CHAMBER OF COMMERCE, INC. vs. JOHN T. GRACE & others (and a companion case). June 8, 1982. By their cross complaints for declaratory and other relief, the Provincetown Chamber of Commerce, Inc. (Chamber), and John T. Grace, Robert F. Silva, and Joseph P. Cannistraro (Grace group) sought to determine their respective rights to the possession and use of the surface of a rectangular parcel of land which measures approximately twenty by thirty feet and is adjacent to their respective properties at or near Commercial Street in Provincetown.

The Chamber's complaint alleged that it and its predecessor, the Provincetown Board of Trade (Board), have title and the right to occupy the parcel; that on May 14, 1971, the Chamber granted the Grace group an easement in the parcel; that the easement was given for the purpose of enabling the Grace group to install and maintain a subsurface sewage system for the benefit of both parties; that the easement was to last as long as both parties owned their respective properties; that the parties also entered into a written lease which gave the Grace group the right to use the surface of the parcel during the summer season as an outdoor eating area for customers of the refreshment stand it operated; that the lease has expired; and that since 1977 or 1978 the Grace group has been trespassing on the parcel by continuing to use its surface during the summer over the Chamber's objections.

In its answer, the Grace group denied that its right to use the surface of the parcel derived from a written lease, and denied the existence of such a lease. In its own original complaint, the Grace group alleged that the parties negotiated an oral agreement; that the sewage easement was granted in confirmation of one part of that agreement; that the Chamber further agreed that the Grace group, as consideration for constructing and maintaining the sewage system, would have the right to "improve, use and occupy" the surface of the parcel as an eating area "each and every summer season for as long as . . . [it] wished . . . without charge"; that the Grace group performed its part of the agreement in reliance on the Chamber's representations regarding that right; and that the Chamber made those representations for "the purpose and intent of inducing . . . [it] to construct the . . . septic . . . [system] and clean up and improve the . . . area."

The actions were consolidated for purposes of trial and disposition, and referred to a master under a nonjury order of reference. See Rule 49(7) of the Superior Court, as amended (1976). The master's initial report was recommitted on the Chamber's objections. His supplemental report was adopted over the objections of the Grace group. In each case judgment entered which (a) declared that the Grace group had no right to use the parcel "for any purpose other than as the site of a subsurface

sewage disposal system"; (b) permanently enjoined them from making any other use of the parcel; and (c) determined that neither party was entitled to damages or costs. The Grace group has appealed.

1. In his initial report, the master focused on the fact that record title to the parcel rests not in the Chamber, but in the Provincetown Board of Trade. Based on that fact, he decided that the Chamber "has not established its right to either use the premises in question or grant any easements for its use," and concluded that the Chamber had "no right to interfere with the use" of the parcel by the Grace group. In its complaint, however, the Chamber claimed its possessory rights through the Board as its predecessor. Moreover, as the judge noted in the memorandum accompanying his order for recommittal, paragraph nine of the Grace group's own complaint alleged that the Chamber "has at all times material to this action occupied, maintained, managed, and controlled . . . [this parcel] belonging to the . . . Board." That allegation of fact bound the Grace group as an admission, G. L. c. 231, § 87, as appearing in St. 1973, c. 1114, § 190; *Davenport* v. *Squibb*, 320 Mass. 629, 634 (1947); *Valentine Lumber & Supply Co.* v. *Thibeault*, 333 Mass. 361, 363 (1955); see *McCray* v. *Weinberg*, 4 Mass. App. Ct. 13, 16 (1976), and cases cited, and its effect is not mitigated by anything else in the complaint. In view of that admission, the grant of the easement, and the Grace group's express reliance on an agreement predicated on the easement as the source of its rights, the evidence was sufficient to establish that the Chamber had a possessory interest which allowed it to exclude anyone who could not show better title. See *Slater* v. *Rawson*, 6 Met. 439, 446 (1843); *Morrison* v. *Holder*, 214 Mass. 366, 370 (1913); *Opinion of the Justices*, 365 Mass. 681, 689 (1974). As a result, the judge was clearly correct in his determinations that the master was not free to find that the Chamber had no right to use the land or grant an easement, see *DeNunzio* v. *City Manager of Cambridge*, 341 Mass. 420, 421 (1960), and cases cited, and that there were defects apparent on the face of the report which required its recommittal. See *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 282-283 (1976). See also *Larson* v. *Brockton Agricultural Soc.*, 344 Mass. 463, 465 (1962); *LaRose* v. *Campbell*, 5 Mass. App. Ct. 840 (1977).

2. The judge denied motions by the Grace group to amend paragraph nine of its complaint, and to strike portions of the Chamber's complaint. There was no error. The judge could properly have considered the facts that the case had already been tried once to the master; that the order for recommittal had already been entered, along with the memorandum spelling out the errors in the master's analysis; that the motion to amend sought to discard the Grace group's original theory and introduce a new and contradictory basis for relief; and that even the most restrictive reading of the easement, which was part of the agreement upon which the Grace group originally relied, indicated possessory rights in the Chamber. Read in the context of the Grace group's original complaint, paragraph

nine leaves little room for the present contentions that the paragraph was misinterpreted by the judge or that the Grace group's motions merely sought to clarify its previous position. Further, the judge was not required to accept the argument that the Chamber's evidence regarding a lease between the parties was irrelevant to this case. Nor was the master's erroneous analysis of the case a reason for amending the pleadings to conform to the proof. Although it is generally the practice to allow liberal amendment of the pleadings, see Mass.R.Civ.P. 15, 365 Mass. 761 (1974), the judge's denial of the motions in the present circumstances has adequate support, and cannot be considered an abuse of discretion. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-293 (1977); *Genesco, Inc.* v. *Koufman,* 11 Mass. App. Ct. 986, 990 (1981).

3. By acting on the master's supplemental report, the judge implicitly excused its late filing. No abuse of discretion has been shown.

4. In the memorandum accompanying the order for recommittal, the judge attached some significance to the Chamber's claim that the Grace group's right to use the parcel derived solely from a written lease, which had expired. The memorandum further indicated the judge's view that if the Grace group's rights derived from an oral agreement, it could amount to nothing more than an agreement for a license, which would have been revocable by the Chamber at will. The resulting order confined the master to determining whether the Chamber "entered into a binding and enforceable agreement to grant [the Grace group] a license for seasonal use of the parcel after the 1978 season," and if so, the amount of any damages resulting from any breach. The order permitted the master to take additional evidence but he did not do so. His supplemental report merely summarized the initial proceedings (at which the Grace group presented no evidence), and made some additional findings of background facts. Among these was a finding that in 1971 the Grace group was given a right to use and improve the surface of the parcel in exchange for constructing, and permitting the Chamber to use, a new sewage system. Based on a cursory analysis in the terms set out by the judge, the master concluded that there was no evidence of any agreement to grant a license for use after the 1978 season. The supplementary report was ultimately adopted over the Grace group's objections.

It is apparent to us that this case went off course when the judge limited the scope of the recommittal to the issue of license, a decision based in part on the Chamber's undocumented allegations regarding the existence and expiration of a lease. The situation was aggravated when the master, pursuing this limited inquiry, chose to take no new evidence. In our view, the net result was to deny the Grace group an opportunity to prove that it has a presently enforceable agreement for seasonal use of the parcel, or that the Chamber is estopped to deny the existence of such an agreement. Both of these theories were fairly raised by the Grace group's original complaint, and it adequately preserved its rights by objecting to

Rescript Opinions.

the master's failure to hear its evidence on recommittal. We do not think that such evidence should be barred by the Grace group's failure to present it at the first hearing, which was dominated by the master's erroneous view regarding the dispositive effect of record title. Nor do we think that the obstacles presented by the Statute of Frauds and the parol evidence rule should bar it from attempting to present admissible evidence of its original claim. The order for recommittal encouraged the master to take further evidence if necessary for a proper determination of the issues, and we think such evidence is required here. Although the judge's analysis may ultimately prove correct, it appears that material questions have been decided principally on the unproved and somewhat confusing representations of counsel. We conclude that as matters presently stand the master's supplemental report fails to provide a satisfactory factual framework for a fair determination of all the issues. See *Minot* v. *Minot*, 319 Mass. 253, 257-258 (1946); *J.T. Healy & Son* v. *James A. Murphy & Son*, 357 Mass. 728, 739 (1970).

5. The cases will be remanded for further proceedings in the Superior Court, which shall include the taking of such further evidence from both parties as may be necessary to resolve the issues raised by the Grace group's original complaint. In this regard, the record supports a conclusion that the Grace group's conduct constituted a waiver of the jury claim it filed in No. 38243. The indicia of waiver here are stronger than those discussed in *M.J. Pirolli & Sons* v. *Mass. Equip. & Supply Corp.*, 9 Mass. App. Ct. 863, 863-864 (1980) (where a waiver was found), and materially unlike the situations presented in *Star Sales & Distrib. Corp.* v. *A.B.C. Drywall Co.*, 6 Mass. App. Ct. 866 (1978), and *Johnson* v. *Post Motors, Inc.*, 7 Mass. App. Ct. 857 (1979) (where waivers were not found). The judge assigned to the cases may henceforth treat them as jury-waived. If he chooses, the judge may also recommit them to the master for further proceedings. However, in view of the failure of that procedure to resolve these cases the judge should consider salvaging whatever facts he can from the master's reports, see Mass.R.Civ.P. 53(e)(2), 365 Mass. 820 (1974), and conducting further hearings before the court.

The judgments are reversed and the cases remanded to the Superior Court for further proceedings consistent with this opinion. Neither party is to have costs of appeal.

*So ordered.*

*Edward E. Veara (Paul V. Benatti* with him) for John T. Grace & others.

*James M. Falla* for Provincetown Chamber of Commerce, Inc.