SUFFOLK BUILDERS SUPPLY, INC. *vs.* TOCCI BUILDING
CORPORATION & others.[1]

Suffolk. February 6, 1991. - May 15, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Summary judgment. *Surety. Bond*, Construction contract
bond, Private building project. *Payment. Words*, "Justly due."

A supplier of materials to a subcontractor that brought an action against
the principal contractor and its surety on a payment bond pursuant to
G. L. c. 149, § 29A, did not demonstrate there was no genuine issue of
material fact concerning what sum was "justly due" the supplier under
the terms of the bond. [153-154]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 25, 1987.

The case was heard by *Robert A. Mulligan*, J., on a mo-
tion for partial summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Robert M. Ruzzo* for Tocci Building Corporation &
another.

*Thomas J. Butters* for the plaintiff.

NOLAN, J. In 1986, Tocci Building Corporation (Tocci)
entered into a contract with 280 Summer Street Associates
to serve as the general contractor on a construction project at
that address in Boston. Thereafter, Tocci, as principal, exe-
cuted a payment bond with the Aetna Casualty and Surety
Company (Aetna) as surety to secure payment for all labor
and materials used in the project. Ebony Development Cor-
poration (Ebony) entered into a subcontract with Tocci to

---

[1]Ebony Development Corporation and Aetna Casualty and Surety
Company.

supply labor and materials for the project. Ebony entered into a contract with Suffolk Builders Supply, Inc. (Suffolk). Suffolk delivered goods and materials to Ebony which were incorporated into the project.

Tocci issued five checks to Ebony, payable jointly to Ebony and Suffolk. Ebony negotiated the fifth check, dated April 1, 1987, in the amount of $66,693.87, with the endorsement of a Suffolk salesman. The value of goods supplied but not paid for on April 1, 1987, was $49,610.54. From the fifth check Suffolk took $9,517.04. The ultimate value of the unpaid goods and materials which were delivered to Ebony and incorporated in the project is $41,786.81.

Suffolk filed a complaint against Tocci and Aetna under G. L. c. 149, § 29A (1988 ed.).[2] That statute states: "Whenever any surety bond shall be given in connection with any written contract for the erection, alteration, repair or removal of any private building or structure upon privately owned land, containing a condition for the payment of all labor and material used or reasonably required for use in the performance of the contract, any person who furnishes such labor or materials shall be entitled to sue for his own use and benefit upon such bond in accordance with its provisions and need not prove that he relied upon the bond furnishing labor or material."

A surety bond had been obtained by Tocci from Aetna in connection with the construction contract. The relevant provision of the bond reads: "The above named Principal and Surety [Tocci and Aetna, respectively] hereby jointly and severally agree with each other that every claimant . . . who has not been paid in full before the expiration of . . . ninety (90) days after the date on which . . . materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment *for such sum or sums as may be justly due such claimant* and have execution thereon" (emphasis added).

---

[2]Suffolk also brought an action for breach of contract against Ebony. Ebony never responded and a default judgment was entered for Suffolk.

The motion judge determined that Suffolk, as a supplier of material to a subcontractor, is a proper claimant on the Aetna bond. We agree. However, the matter is not ended there, because there remains a genuine dispute as to material fact concerning what sum is "justly due" Suffolk. Suffolk, as the party moving for summary judgment, is obligated to demonstrate that there is no genuine issue as to material facts. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982).

Under the terms of the bond, a supplier who has not been paid in full may recover only "such sum or sums as may be justly due." Tocci claims, in effect, that the sum claimed by Suffolk is not "justly due" because a check in an amount exceeding the amount claimed by Suffolk was issued jointly to Suffolk and Ebony and endorsed by Suffolk. By endorsing the check, Tocci asserts, Suffolk waived its right to sue on the bond for the amount it should have taken from the check. There is support for the proposition that a supplier ought to take what it is owed from a joint check and will be barred from recovering against the issuer of such a check if it does not. See *Iowa Supply Co.* v. *Grooms & Co. Constr.*, 428 N.W.2d 662 (Iowa 1986); *Anchor Concrete Co.* v. *Victor Sav. & Loan*, 664 P.2d 396 (Okla. 1983).

It is undisputed that on the date of the joint check, April 1, 1987, the total value of goods supplied to Ebony by Suffolk but not yet paid for was $49,610.54. It is also undisputed that from the joint check of $66,693.87, Suffolk received only $9,517.04. Suffolk claims that it took all that was then payable to it from Ebony.[3]

---

[3]We addressed a similar problem under the mechanics' lien statute in *Valentine Lumber & Supply Co.* v. *Thibeault*, 336 Mass. 407 (1957). There we held that where a homeowner issued a joint check for the sole purpose of protecting itself from liability under the mechanics' lien statute, the underlying contract between the contractor and the supplier was irrelevant. Where the principal is a general contractor rather than a homeowner, the rule is different.

We accept as a general principle that an amount payable to the supplier on the date that the joint check is endorsed by the supplier is treated as discharged, assuming that the supplier took no more than that amount from the check. The general contractor may prove, however, the existence of contrary controlling indications based on the circumstances of the relationship between the general contractor and the supplier, such as custom and practice of the trade or an explicit contrary agreement. There is nothing on this record as to any understanding among the parties as to the effect of the joint check. Nor is there anything on the record concerning what would be reasonable in the circumstances, or what was the common trade practice. Moreover, there is nothing on the record which demonstrates what amounts were payable to Suffolk from Ebony on the date the check was endorsed.[4] Suffolk, the party moving for summary judgment, has not demonstrated an absence of dispute over the facts on these points. Summary judgment, therefore, should not have entered.

Judgment is reversed. This case is to be remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[4] We note that materials valued at $1,120.90 were supplied by Suffolk during the month of April, 1987, after the joint check had been negotiated. As to this amount, summary judgment would have been proper, because Tocci cannot claim that Suffolk should have taken compensation for materials which had not yet been supplied on the date of the check.