Argued and submitted July 22, 1982, reversed and remanded May 25, 1983

SAYLER et al,
*Respondents,*
*v.*
CITY OF DURHAM,
*Appellant.*

(41-852; CA A22772)

663 P2d 803

Dale M. Hermann, Portland, argued the cause and filed the brief for appellant.

Mary Mertens, Portland, argued the cause for respondents. On the brief was Phillip C. Querin, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant City appeals from a summary judgment in favor of plaintiffs, finding that the City lacks standing to enforce a "Buffer and Landscape Easement" contained in the recorded plat of a Planned Unit Development (PUD) approved by the City. We reverse.

Most of the facts are undisputed. A land developer applied to the City for approval of a PUD. The City gave preliminary approval subject to a number of conditions, including that the PUD contain a 40-foot wide buffer area of natural vegetation between one side of the PUD and Boones Ferry Road. The developer complied with this condition by including a "Buffer and Landscape Easement" (easement) in the recorded plat of the PUD. The easement runs over portions of the six lots that adjoin Boones Ferry Road. Although the plat shows the location of the easement and identifies it as a "Buffer and Landscape Easement," it does not indicate whether the easement is for the benefit of only the landowners in the PUD or the public in general.

Plaintiffs are owners of one of the lots affected by the easement, which runs over the back 40 feet of their lot. In June, 1980, they began building a fence enclosing a portion of their lot, including the easement. The City posted a stop work order on plaintiffs' property, which stated that the fence constituted a violation of the development plan of the PUD. In October, 1980, the City demanded that plaintiffs remove the portion of the fence that encroached on the easement.

Plaintiffs filed an action for a declaratory judgment, seeking, in part, declarations that: (1) the easement does not prohibit them from building the fence, (2) the City lacks standing to enforce the easement, (3) plaintiffs may complete the fence in a manner consistent with the PUD's protective covenants and (4) if the City can legally prohibit them from building the fence, it must compensate them for the fair market value of the portion of their lot over which the easement runs.

In its answer, the City alleged, in part:

"IV.

"That the plat of Kingsgate is a planned unit development located within the City limits of the City of Durham and was platted with the approval of the City Council of the City of

Durham. That said plat includes a 40 ft wide landscape and buffer zone which was imposed by the City of Durham as a condition of approval of said plat.

"* * * * *

"X.

"That said fence as constructed and as contemplated by plaintiffs is inconsistent and harmful to the purposes and intent of the landscape and buffer easement so imposed for citywide benefit to provide a natural buffer strip between the proposed residential development and Upper Boones Ferry Road, a public street and highway, located within the City of Durham."

■     The City asserts, for the first time on appeal, that the trial court lacked subject matter jurisdiction. The lack of subject matter jurisdiction may be raised for the first time on appeal. *Dippold v. Cathlamet Timber Co.,* 98 Or 183, 193 P 909 (1920); *Montmore Homeowners Assoc. v. Brydon,* 55 Or App 242, 246, 637 P2d 931 (1981). The City argues that the Land Use Board of Appeals (LUBA) has exclusive jurisdiction to review the City's decision to issue a stop work order and to insist that the fence be removed. In 1980, when the City took those actions, LUBA had exclusive jurisdiction to review "land use decisions," Or Laws 1979, ch 772, § 4(1), which were defined, in part, as follows:

" 'Land use decision' means:

"(a)   A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

"(A)   The state-wide planning goals;

"(B)   A comprehensive plan provision; or

"(C)   A zoning, subdivision or other ordinance that implements a comprehensive plan; * * *"[1]

Or Laws 1979, ch 772, § 3(1)(a).

The City argues: It issued the stop work order because the fence violated a condition of approval of the PUD, *i.e.,* the establishment of a natural buffer between the PUD and Boones Ferry Road, imposed by the City for the benefit of the

---

[1] An amended definition of "land use decision," not applicable to this decision, is now codified in ORS 197.015(10).

public; the imposition of the condition involved the application of its comprehensive plan and its ordinance that implements the plan; therefore, LUBA has exclusive jurisdiction to review the City's decision.

■ The City's argument misses the point. The subject matter of a dispute is framed by the pleadings. The question is whether the pleadings frame a dispute over which the circuit court has jurisdiction. *See Dippold v. Cathlamet Timber Co., supra,* 98 Or at 189. Plaintiffs did not contest that the City can impose conditions of approval on a PUD or that the easement was imposed as a condition of approval. The pleadings here establish two issues: whether the City has standing to enforce the easement and whether the easement prohibits plaintiffs from building a fence. Neither issue involves the application of an ordinance implementing a comprehensive plan. The first issue turns on whether the City has the power to enforce conditions it had imposed on the developer for approval of the PUD against subsequent purchasers of lots in the PUD. The second issue involves the interpretation of the scope and nature of the easement. The proper forum in which to raise those issues was the circuit court, not LUBA.

■ Both parties moved for summary judgment. On the issue of the City's standing to enforce the easement, plaintiffs argued that it did not have standing, because the easement was only for the benefit of the residents of the PUD. The City argued that it had compelled the developer to create an easement for the benefit of the public as a condition of approval of a PUD and that, therefore, it had standing to enforce the easement. The court granted plaintiffs' motion on the ground that the City "lacks standing to enforce the 'Buffer and Landscape Easement.'"

Summary judgment is appropriate

"* * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of of law. * * *" ORCP 47C.

It is undisputed that the City gave preliminary approval for the PUD subject to the condition that it contain a 40-foot buffer area of natural vegetation along Boones Ferry Road, that the developer complied with this condition by including the easement in the plat and that the City approve the plat. The only

question is one of law: whether the City has standing to enforce the easement, recorded by a developer to comply with a condition of approval of a PUD, against purchasers of a lot in the PUD. We decide that the City has standing.

In *Frankland v. City of Lake Oswego,* 267 Or 452, 517 P2d 1042 (1973), the court discussed the PUD concept:

> "The concept of a planned unit development was initiated by planners and public officials to remedy the defects in traditional zoning theory and practice. * * *

> "The objectives of planned unit developments are: (1) to achieve flexibility; (2) to provide a more desirable living environment than would be possible through the strict application of zoning ordinance requirements; (3) to encourage developers to use a more creative approach in their development of land; (4) to encourage a more efficient and more desirable use of open land; and (5) to encourage variety in the physical development pattern of the city.

> "We agree that a planned unit development which is well conceived and well designed will achieve these objectives. However, while the primary benefits of a PUD ordinance are flexibility in design and improved development and use of land areas, these objectives can be secured only if the planning authority retains its control by, at a minimum, overseeing and approving general development plans of a developer. * * * Once approved, the developer should be bound by the plans unless any changes are approved by the planning authorities in accordance with the PUD ordinance." 267 Or at 461-63. (Footmote omitted.)

The PUD ordinance in *Frankland* required the developer to submit, as part of its final development plan, architectural sketches of the buildings to be constructed. The city approved the final plan, granted a zone change and adopted an ordinance to that effect. The court addressed the legal effect of the requirement that the developer submit sketches:

> "Implicit in this requirement is that the developer build in accordance with these sketches so that the City's approval of the sketches acts as a device to control development. Thus, if a developer fails to comply with the sketches he has submitted, he is in noncompliance with the final plan and the zoning ordinance which was passed to implement that final plan." 267 Or at 465.

The *Frankland* rationale applies to the standing issue here, even though there is no evidence that the City passed an ordinance to implement the plan and it is attempting to enforce the easement against a subsequent purchaser from the developer. As part of its planning process under its PUD ordinance, the City conditioned its approval on the developer's inclusion of a natural buffer area on one side of the PUD. The City's final, quasi-judicial, discretionary act concerning the PUD was its approval of the plat that included the easement. Under these circumstances, we presume, in the absence of evidence to the contrary, that the City, a public body, insisted on the easement to further a public purpose. As a representative of the public, it has a significant interest in enforcing the easement to ensure that the conditions it imposed as part of its planning process and the plat it approved under its PUD ordinance are complied with so that the public purpose for which the easement was created will be furthered.

In some circumstances, a local government can ensure that conditions of approval be complied with and protect the public interest by enforcing its PUD or subdivision ordinance against the developer. *See Frankland v. City of Lake Oswego, supra; Lane County v. Oregon Bldrs,* 44 Or App 591, 606 P2d 676 (1980). Here, however, for the City to protect the public's interest, it must have the right to enforce the easement that it imposed as a condition of approval of the PUD plat against subsequent purchasers from the developer, who the City believes are encroaching on the easement. Consequently, we hold that, as a matter of law, the City had standing to enforce the easement, and the trial court erred in granting plaintiff's motion for summary judgment.[2]

Reversed and remanded for further proceedings.

---

[2] Our decision addresses whether the City has standing to enforce the easement. We express no opinion on whether the easement prohibits plaintiffs from building a fence.