VIRGINIA E. PATELLE & others[1] *vs.* PLANNING BOARD OF
WOBURN & another[2]
(and a companion case[3]).

Middlesex. March 7, 1985. — June 28, 1985.

Present: BROWN, CUTTER, & KASS, JJ.

*Subdivision Control. Zoning,* Plan approved under subdivision control law,
Amendment to by-law or ordinance. *Notice.*

A municipal planning board had authority under G. L. c. 41, § 81W, to
approve modifications to a recorded subdivision plan proposed by its
developer without the consent of owners of lots in the subdivision, where
the alterations approved by the board, affecting traffic pattern, view,
and over-all neighborhood density, did not have a direct and tangible
impact on the property rights of the lot owners. [280-284]

In the circumstances, owners of lots in a subdivision received adequate
notice of a hearing before the municipal planning board held for the
purpose of considering modifications to the recorded subdivision plan
proposed by its developer. [284]

A real estate developer who initially submitted a subdivision plan to a munic-
ipal planning board in 1976, and later, in 1980, submitted to the board
proposed modifications to the recorded plan was not required under
G. L. c. 40A, § 6, sixth par., to comply with an amendment to the
city's zoning ordinance adopted in 1978. [284]

CIVIL ACTIONS commenced in the Superior Court Department
on October 25, 1976, and May 2, 1980, respectively.

The cases were heard by *Richard S. Kelley,* J., on a master's
report.

*Mark A. White* for Virginia E. Patelle & others.
*John J. Veysey* for George Whitten.

---

[1] Other lot owners in Blueberry Hill I.

[2] George Whitten, the subdivision developer.

[3] Richard D. Sevier & others *vs.* Planning Board of Woburn.

KASS, J. Following the sale in 1976 and 1977 of lots in a Woburn subdivision known as Blueberry Hill I, the planning board of Woburn, acting under G. L. c. 41, § 81W, approved modifications to the recorded subdivision plan proposed by the developer. Residents of the subdivision, thinking the changes adverse to their neighborhood, instituted a hydra-like series of actions aimed at compelling the subdivision developer and the planning board to adhere to the original plan for Blueberry Hill I.[4]

Two of that volley of law suits are the subject of this appeal.[5] The planning board, after hearing (as required by *Patelle* v. *Planning Bd. of Woburn,* 6 Mass. App. Ct. 951 [1978]) and acting under G. L. c. 41, § 81W, approved three modifications in the original Blueberry Hill I plan: (1) the transformation of a cul-de-sac into a through street; (2) the relocation within the subdivision of an open space area of 6.73 acres; and (3) the creation of four or five house lots out of a portion of what previously had been designated open space.[6] That revised plan was a stage of a long range plan for the development of a 100-acre tract. The developer had acquiesced in a phased development of the site after the planning board had disapproved a plan which sought to subdivide the entire tract at once into eighty lots.

1. *Board's authority under § 81W to modify plan without the plaintiffs' approval.* The major issue which the plaintiffs press is whether the planning board, exercising powers conferred by G. L. c. 41, § 81W, could have approved the modifications it did without the consent of the plaintiffs. Under § 81W, a planning board may "modify, amend or rescind its approval of a plan of a subdivision, or[ ] require a change in a plan" on its own motion or on the petition of any person interested. "No modification, amendment or rescission of . . .

---

[4] A master, to whom three actions had been referred, observed that, in the aggregate, the controversy appeared to have spawned six or seven actions.

[5] One of those has previously been before us. See *Patelle* v. *Planning Bd. of Woburn,* 6 Mass. App. Ct. 951 (1978).

[6] This is the estimate of the master.

a plan . . . ," however, "shall affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan, or any rights appurtenant thereto, without the consent of the owner of such lots, and of the holder of the mortgage or mortgages, if any, thereon."

Their lots, or rights appurtenant to them, the plaintiffs contend, are affected because a through street, rather than a dead-end street, will produce more traffic and because it is less agreeable to live next to a house lot than next to open space. The value of their homes, the plaintiffs say, will be diminished. We are of opinion that the word "affect," as it appears in G. L. c. 41, § 81W, does not have the broad meaning the plaintiffs ascribe to it.

Analysis begins with St. 1947, c. 340, § 4, which introduced into the Subdivision Control Law the capacity to amend approved subdivision plans.[7] The 1947 act contained no provision for the consent of owners or mortgagees to plan modifications. In 1949, the State Planning Board, as part of its annual report, made recommendations to the Legislature which appeared in 1949 House Doc. No. 117. That document reviewed the purpose of the modification and rescission provision:

> "[The 1947] provision was inserted because of the existence of a number of plans, some of them obsolete, which prevented or hampered the development of the land covered by the plan."

Enactment of that legislation, the report continued:

> "has given rise to the fear that after land had been sold or mortgaged, a rescission of the approval of the plan might render it impossible to use.
>
> "In order to avoid the possibility of upsetting land titles therefore, the State Planning Board recommends . . . that

---

[7] In the 1947 recodification of the Subdivision Control Law, the post-approval amendment provision appeared as § 81N.

a further provision be added, to the effect that no titles or mortgages acquired in good faith for valuable consideration under the approval shall be affected by a subsequent amendment, modification or rescission."

As an accompaniment to its recommendation the State Planning Board offered 1949 House Doc. No. 122, a bill containing language similar to that adopted that year as St. 1949, c. 182, § 1.[8] With relatively minor differences, the language of the 1949 act is that which now appears in the first clause of the second paragraph of § 81W. This history establishes that the plan modifications which the Legislature sought to guard against when it used the verb "affect" were those which impaired the marketability of titles acquired by bona fide purchasers from subdividers. Examples would be modifications which altered the shape or area of lots, denied access, impeded drainage, imposed easements, or encumbered the manner and extent of use of which the lot was capable when sold. The target of the statute was not those changes which might have an indirect qualitative impact, such as alteration of a dead-end street into a through street.

Any number of physical changes affect, in greater or lesser degree, lots in a subdivision, e.g., location of trees, width of streets, planting between the curb and lot lines, traffic signals, overhead or underground utilities, or street lighting. They do not, however, limit the utility of those lots and, hence, do not

---

[8] House Doc. 122 proposed: "No modification, amendment or rescission of a plan of a subdivision shall affect lots, sites and divisions which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan without the consent in writing of the owner of such lots, sites or divisions and of the holder of the mortgage or mortgages, if any, thereon."

The text of St. 1949, c. 182, § 1, was: "No modification, amendment or rescission of the approval of a plat of a subdivision or change in such plat under this section shall affect lots, sites and divisions which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plat, or any rights appurtenant thereto, without the consent in writing of the owner of such lots, sites or divisions and of the holder of the mortgage or mortgages, if any, thereon."

"affect" them in the statutory sense. The alterations approved by the planning board in the instant case fall into this indirect impact category. They affect traffic pattern, view, and over-all neighborhood density, matters as to which the plaintiffs had acquired no rights through covenants, easements, or other tool of private land use control. Cf. *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 262 (1970); *Murphy* v. *Donovan*, 4 Mass. App. Ct. 519, 526-528 (1976). The plaintiffs' complaints about traffic or an unwanted backyard neighbor are matters with which § 81W is unconcerned.

There is no support for the plaintiffs' position in *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 714-715 (1971), or *Bigham* v. *Planning Bd. of No. Reading*, 362 Mass. 860 (1972). In each of those cases a planning board had purported to rescind altogether a subdivision plan, rather than modifying it, thus rendering lots sold from the subdivision useless for building purposes. See *Murphy* v. *Planning Bd. of Norwell*, 5 Mass. App. Ct. 393, 395 (1977).

General policy considerations underlying the Subdivision Control Law support this interpretation of § 81W. A planning board is authorized by the Subdivision Control Law to protect the "safety, convenience and welfare" of a municipality's inhabitants by "regulating the laying out and construction of ways in subdivisions." G. L. c. 41, § 81M. The law is designed to benefit those inhabitants primarily and those who purchase lots in developments only secondarily. *Gordon* v. *Robinson Homes, Inc.*, 342 Mass. 529, 531-532 (1961). Compare *Dolan* v. *Board of Appeals of Chatham*, 359 Mass. 699, 701-702 (1971). As part of their powers, planning boards "coordinat[e] the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions." G. L. c. 41, § 81M. See *McDavitt* v. *Planning Bd. of Winchester*, 2 Mass. App. Ct. 806, 807 (1974). An expansive construction of the word "affect" in § 81W would unduly restrict this power. Effectively, a planning board would be unable to authorize, and a developer would be unable to execute, development of property in stages,

as was done here, by connecting one stage to the next through the extension of roads and transformation of open land to lots.

To be sure, the Subdivision Control Law establishes "an orderly procedure for definitive action within stated times . . . so that all concerned may rely upon *recorded action* . . ." (emphasis added). *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964). *Cassani* v. *Planning Bd. of Hull*, 1 Mass. App. Ct. 451, 457 (1973). That principle does not, however, extend to inflexible retention of aspects of a recorded subdivision plan that do not have a direct and tangible impact, as described in this opinion, on the property rights of lot purchasers. If purchasers of lots in a subdivision desire such protection, they may obtain it by insisting on specific covenants in their deeds.

2. *Other issues.* We dispose of the other points raised on appeal in comparatively summary fashion.

(a) *Notice of hearing.* There was no inadequacy in the notice of the February 11, 1980, hearing held pursuant to *Patelle* v. *Planning Bd. of Woburn*, 6 Mass. App. Ct. at 952. That notice described the land sufficiently for identification, viz., "Twenty three lot subdivision located off Holton Street and known as Blueberry Hill I Ext. Petitioner is George Whitten." The notice also recited the purpose of the hearing. That satisfied the requirements of G. L. c. 41, § 81T. There was no mystery about the identity of the subdivision plan, and the plaintiffs say as much in their complaint and are bound by that as an admission. See *Provincetown Chamber of Commerce, Inc.* v. *Grace*, 14 Mass. App. Ct. 903, 904 (1982).

(b) *Requirement for a special permit.* The subdivision plan was initially submitted to the planning board in February, 1976. Under G. L. c. 40A, § 6, sixth par., inserted by St. 1975, c. 808, § 3, the developer was not required to comply with an amendment to the Woburn zoning ordinance (dealing with cluster developments) adopted in 1978. See *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433, 435-437 (1975).

The judgment in Superior Court No. 76-5323, which adjudged that the planning board's approval on April 14, 1980, of the definitive subdivision plan entitled "Blueberry Hill I (Ext.)" was not in excess of its authority, is affirmed. The

Patelle *v.* Planning Board of Woburn.

judgment in Superior Court No. 80-2229, which, among other things, also affirmed the approval of that plan, and of the plan entitled "Blueberry Hill I Extension III," is affirmed.

*So ordered.*