791 P.2d 466

The VILLAGE OF LOS RANCHOS DE ALBUQUERQUE, a Municipal Corporation, Plaintiff–Appellant,

v.

James R. SHIVELEY, Patsy S. Shiveley and Roadrunner Estates Association, a New Mexico Non–Profit Corporation, Defendants–Appellees.

No. 10503.

Court of Appeals of New Mexico.

Nov. 7, 1989.

Certiorari Denied April 17, 1990.

John M. Wells, Wells & Mande, P.A., Albuquerque, for plaintiff-appellant.

Herb Kraus, Jennie Deden Behles, J.D., P.A., Albuquerque, for defendant-appellee Shiveley.

Thomas L. Grisham, Grisham, Lawless & Earl, J.D., P.A., Albuquerque, for defendant-appellee Roadrunner Estates.

## OPINION

CHAVEZ, Judge.

Plaintiff is the Village of Los Ranchos (Village). Defendants are the individual owners and subdividers of a parcel of real estate, James and Patsy Shiveley (Shiveley), and the corporation created to hold title to the subdivision, Roadrunner Estates Association (Association).

The Village appeals the trial court's order granting summary judgment in favor of defendants and its order dismissing the complaint. The Village raises two issues: (1) whether the trial court erred in finding that the Village was attempting to enforce private covenants, and (2) whether the trial court erred in finding that a municipality which approves a subdivision plat based on certain restrictions or covenants cannot later enforce those restrictions or covenants, but may only enforce its subdivision ordinance. Defendants jointly cross-appeal, claiming (1) that the dismissals are not final, appealable orders, and (2) that the restrictions placed on the subdivision are restraints on alienation. We reverse and hold that a planning authority has standing to enforce reasonable restrictions imposed as a condition of subdivision approval.

## BACKGROUND

On September 12, 1984, Shiveley and his engineer presented to the Village Board of Trustees (Board) a plan for subdividing his 8.0127 acres for a cluster housing development. Seven new homes were to be built on three acres (approximately one-quarter-acre for each lot); the remaining five acres (Lot 8) would be undivided land jointly owned by the residents (common area). This plan would allow Shiveley to comply with the Village's density requirements, which require lots to be a minimum of one acre in size, because each resident would have an interest in a one-acre lot, and the overall density of the subdivision would not exceed one home per acre. The proposal included a Plat of the subdivision (Plat) and a Declaration of Covenants, Conditions and Restrictions (Declarations).

The Village attorney and Shiveley disagreed as to whether the Declarations and the Plat were written to prevent the sale of the common land separately from the other lots. Apparently, the Board has required in prior subdivision approvals that the undivided interest in a common area not be separated or sold separately from the ownership of each individual lot. Hence, the restrictive covenants were needed to legally bind the owners to this requirement. Finally, pursuant to a revised Plat and Declarations, the subdivision was approved on the condition that Shiveley furnish the Mayor with the sales contract for review before any lots were sold. The Plat and Declarations were filed and recorded on September 19, 1984, and October 2, 1984, respectively.

After obtaining approval for the subdivision, the Association gave Shiveley a ninety-nine-year lease to the common area, commencing October 1, 1984, with an Option to Purchase. It appears that James and Patsy Shiveley were the only members of the Association at the time. After conveying two lots to Southwest American Development, defendant Shiveley and the agent for Southwest American Development amended the Declarations. The Amended Declarations differ from the original Declarations in many respects. Some of the differences relevant to this lawsuit include a change in the designation of the original common area to "common easements" and "leased area," and a provision allowing the lessee (Shiveley) to exclude the other lot owners from using the common area.

In his deposition, Shiveley stated he never sold any interest in the common area, that he only conveyed one-quarter-acre lots. He also never presented the sales contracts or deeds to the Mayor for review before selling the lots.

The Village alleges the approval of the subdivision was conditioned on the Declarations and the Plat that, among other things, declared Lot 8 to be a common area that would be undivided and remain in common ownership to be used by all residents of the subdivision. The Village also alleges that the Amended Declarations were not enacted according to the procedures set forth in the original, approved Declarations

and that the Association and the Shiveleys violated the zoning ordinance regulating density and lot size when they entered into a ninety-nine-year lease of Lot 8 with an option to purchase.

The Village asked the court to hold the Amended Declarations null and void and to grant an injunction to stop any future lease or sale of the common area. The trial court found the Village conditioned zoning approval of the subdivision upon the inclusion of covenants and restrictions as set forth in the Plat and the Declarations. It found that the suit was essentially an attempt to enforce private restrictive covenants and, under *Singleterry v. City of Albuquerque,* 96 N.M. 468, 632 P.2d 345 (1981), the Village had no standing. The case was dismissed without prejudice.

We first address defendants' contention regarding the finality of the orders.

JURISDICTION

Defendants contend that this court is without jurisdiction to hear the appeal because (1) the case was dismissed without prejudice and hence is not final, and (2) the order denying the motion for rehearing was not filed until after the notice of appeal. Their arguments are without merit.

On December 4, 1987, a hearing was held on the Association's motion for summary judgment and Shiveley's motion for dismissal. The court orally granted the motions and, on December 7, entered a non-final order retaining jurisdiction over the case. On December 14, the Village filed a "Motion for Rehearing and to Allow a Second Amended Complaint." The court held a hearing and denied the motion on January 14, 1988. On the same date, orders were entered granting summary judgment and dismissal. The Village filed a timely notice of appeal on February 11. The order denying the motion to reconsider and amend was entered on March 8, 1988.

[redacted] In determining whether an order is final, this court looks to the substance rather than to the form of the order. *Maitlen v. Getty Oil Co.,* 105 N.M. 370, 733 P.2d 1 (Ct.App.1987). The order is given a practical rather than a technical construction. *Bralley v. City of Albuquerque,* 102 N.M. 715, 699 P.2d 646 (Ct.App.1985). The dismissal of an action "without prejudice" is in the nature of a judgment. *Id.* The test of whether a judgment is final so as to permit the taking of an immediate appeal lies in the effect the judgment has upon the rights of some or all of the parties. *Id.* A final determination of the rights of the parties with reference to the subject matter of the litigation is not essential. It is the termination of the particular action which makes the judgment final. A decision which terminates the suit, or puts the case out of court without an adjudication on the merits, is a final judgment. *Id.*

[redacted] The trial court found the Village had no standing to bring the action. Although there was no determination on the merits, this order terminated the suit and the proceeding was completely disposed of so far as the court had power to dispose of it. *See Johnson v. C & H Constr. Co.,* 78 N.M. 423, 432 P.2d 267 (Ct.App.1967). Therefore, the judgment of the court was final and appealable.

[redacted] As to defendant's second argument, SCRA 1986, 12–201(A) provides that a notice of appeal filed after the announcement of a decision, but before the filing of the order, shall be treated as filed on the day the final judgment or order is filed. Thus, *Bouldin v. Bruce M. Bernard, Inc.,* 78 N.M. 188, 429 P.2d 647 (1967), which held that appeals lie only from formal written orders or judgments, is superseded by this rule. Moreover, a motion for rehearing or for reconsideration is, procedurally, the equivalent of a motion for a new trial. SCRA 1986, 1–059; *State v. Ragin,* 78 N.M. 542, 434 P.2d 67 (1967). A court has thirty days from the date the motion is filed to grant the motion; otherwise, it is deemed denied. R. 1–059(D). The court heard the motion and entered final judgments dismissing the case without leave to amend on January 14, 1988, thirty-one days after the motion was filed. Thus, the motion was deemed denied. Similarly, an order dismissing a party's entire complaint without authorizing or specifying a definite time for leave to file an amended complaint

is a final order for purposes of appeal. *Bralley v. City of Albuquerque.*

To the extent defendants intend to suggest that the denial of a motion for reconsideration is a separate, appealable event, we disagree. *See Labansky v. Labansky,* 107 N.M. 425, 759 P.2d 1007 (Ct.App.1988). A motion for reconsideration asks the trial court to reconsider issues already presented. *Id.* Where an appeal may properly be taken from a judgment, but has not been taken, a subsequent order refusing to amend or modify the judgment is not appealable, since the denial order confirms the finality of the judgment. *State ex rel. Human Servs. Dep't v. Jasso,* 107 N.M. 75, 752 P.2d 790 (Ct.App.1987).

VILLAGE HAS STANDING TO EN-FORCE CONDITIONS OF APPROVAL

■ The approval of a subdivision plat is done pursuant to a municipality's planning authority. *See* NMSA 1978, §§ 3–19–1 to –12 (Repl.1985); NMSA 1978, § 3–20–7 (Repl.1985). Zoning and planning constitute two different methods of control by local public bodies to assure that land use will not adversely affect the general health, safety, and public welfare. *Chilili Coop. Ass'n v. Sundance Mountain Ranches, Inc.,* 107 N.M. 192, 754 P.2d 1211 (Ct.App. 1988). In order to acquire the advantage of lot subdivision, the property owner must comply with reasonable conditions imposed by the municipality or county. *Colborne v. Village of Corrales,* 106 N.M. 103, 739 P.2d 972 (1987); *City of Albuquerque v. Chapman,* 77 N.M. 86, 419 P.2d 460 (1966). Such conditions can relate to design, the dedication of land, improvements, and restrictive use of the land. *Colborne v. Village of Corrales; Parker v. Board of County Comm'rs,* 93 N.M. 641, 603 P.2d 1098 (1979); *Frankland v. City of Lake Oswego,* 267 Or. 452, 517 P.2d 1042 (1973); *see also* 6A R. Powell, *The Law of Real Property* § 873[1] and [4] (1988); 4 Anderson, *American Law of Zoning 3d* § 25.24 (1986).

The Village is a zoning authority with power to enact zoning ordinances pursuant to NMSA 1978, Section 3–21–1 (Repl.1985). The Village's Ordinance 25 was adopted pursuant to this authority. Section 7 of the ordinance provides:

*Group Housing Projects.* In the case of a housing project consisting of a group of two or more buildings to be constructed on a plot of ground of at least three acres not subdivided into the customary streets and lots and which will not be so subdivided or where the existing or contemplated street and lot layout make it impracticable to apply the requirements of this ordinance to the individual buildings in such housing projects *the application of such requirements by such housing project shall be done by the Board in a manner that will be in harmony with the character of the neighborhood, will insure a density of land use no higher and a standard of open space at least as high as required by this ordinance* in the zone in which the proposed project is to be located. In no case shall the Board authorize a use prohibited in the zone in which the housing project is to be located. [Emphasis added.]

The Village contends that defendants violated this zoning ordinance because they did not comply with the requirements imposed by the Board and because the lease and option to purchase potentially violate the density of land use in the zone where the subdivision is located.

A zoning authority has standing to enforce its zoning ordinances. *City of Santa Fe v. Baker,* 95 N.M. 238, 620 P.2d 892 (Ct.App.1980); NMSA 1978, § 3–21–10 (Repl.1985). Section 3–21–10 authorizes the Village to bring an action for the alleged violations. That section provides:

A. Sections 3–21–1 through 3–21–14 NMSA 1978, and any ordinance adopted pursuant to these sections, shall be enforced, by the zoning authority having jurisdiction, as municipal ordinances are enforced.

B. In addition, if any * * * land is used in violation of Sections 3–21–1 through 3–21–14 NMSA 1978, or any ordinance adopted pursuant to these sections, the zoning authority may institute any appropriate action or proceedings to:

(1) prevent such unlawful * * * use;

(2) *restrain, correct or abate the violation;*

(3) prevent the occupancy of such * * * land; or

(4) prevent any illegal act * * * or use in or about such premises. [Emphasis added.]

■ The Village has the power to pursue an action against defendants for the alleged violations of its ordinance. Were Shiveley to exercise his option to purchase the common area, the one-acre minimum lot size restriction would be violated. The residents would no longer own interests in the common area; instead, they would own only their quarter-acre lots, in contravention of the Village's restrictions. Thus, we hold that the Village has standing under Section 3–21–10 to enforce its zoning ordinance as reflected in the requirements imposed by the Board pursuant to Section 7 of the ordinance.

■ As to the Declarations, once they were approved and recorded with the Plat, they became, in effect, a rezoning even though no specific ordinance was passed. *Nesbit v. City of Albuquerque,* 91 N.M. 455, 575 P.2d 1340 (1977); *South Creek Assocs. v. Bixby & Assocs.,* 753 P.2d 785 (Colo.Ct.App.1987), *cert. granted.* They became as an amendment, addition, or detail of the master plan. NMSA 1978, § 3–19–12 (Repl.1985); *Colborne v. Village of Corrales.* NMSA 1978, Section 3–19–6(E) (Repl.1985) provides that such restrictions shall have the force of law:

E. If the requirement or restriction does not violate the zoning ordinance, the governing body or planning commission of the municipality *may agree with a person seeking approval of a subdivision upon the use, height, area or bulk requirement or restriction governing buildings and premises within the subdivision.* The requirement or restriction shall:

(1) accompany the plat before it is approved and recorded;

(2) have the force of law;

(3) be enforced; and

(4) be subject to amendment or repeal as the provisions of the zoning ordinance and map are enforced, amended or repealed. [Emphasis added.]

■ Insofar as the Declarations relate to restrictions properly within the police power of the local planning authority, they can be enforced in the same manner and by the same authority as the zoning ordinances are enforced. *Id. See also Sayler v. City of Durham,* 63 Or.App. 327, 663 P.2d 803 (1983) (city has standing to enforce buffer and landscape easement contained in recorded plat as a condition imposed by city for its approval of a planned unit development against subsequent purchasers of a lot); *Lane County v. Oregon Builders, Inc.,* 44 Or.App. 591, 606 P.2d 676 (1980) (appellate court upheld injunction sought by county to compel developer to comply with conditions to which he was required to agree to receive approval of subdivision; county's standing not an issue); *New Jerusalem Baptist Church, Inc. v. City of Houston,* 598 S.W.2d 666 (Tex.Civ.App. 1980) (appellate court upheld injunction granted to city to enjoin use of lot by purchaser which violated a restrictive covenant in effect in subdivision; city's standing not an issue). 5 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 66.07[b], at 66–57 (1986) (E. Ziegler rev.), states:

Once a subdivision plat has been approved, a subdivider must comply with all conditions specified in the approval. * * * [T]he municipality may seek a court order compelling a subdivider to comply with noted conditions at any time after approval is granted.

The trial court held, and defendants agree, that the Village has no standing to enforce restrictive covenants. Defendants rely on *Singleterry v. City of Albuquerque,* 96 N.M. at 470–71, 632 P.2d at 347–48, for the rule that only private parties have the right to enforce restrictive covenants. *Singleterry,* however, is distinguishable. In *Singleterry,* the city had nothing to do with the imposition of the restrictive covenants. Here, the restrictive covenants

were imposed as part of the conditions for approval of the planned subdivision. Without approval, defendants could not have subdivided the land in the manner proposed. *See* §§ 3–20–7 and –10. Also, as stated previously, the Village is seeking to enforce subdivision regulations adopted pursuant to its zoning ordinance and planning authority. §§ 3–21–10 and 3–19–6(E). The Declarations in this case are not merely covenants. They contain the conditions of approval and embody a rezoning of the area within the subdivision. *Nesbit v. City of Albuquerque;* § 3–19–6(E).

The purpose of zoning and planning is to protect the general health, welfare, and safety of the public by regulating development so it is orderly and appropriate. The concept of a "well-planned" development protects purchasers from nonperforming developers. *Parker v. Board of County Comm'rs.* Subdivision controls are designed for the benefit of the municipality as a whole, and secondarily, for those who purchase lots in the development. *Patelle v. Planning Bd. of Woburn,* 20 Mass. App.Ct. 279, 480 N.E.2d 35 (1985). If the Village has no standing to enforce its conditions of approval, then developers could agree to the conditions, obtain approval, and then circumvent these restrictions by failing to comply or by blatantly violating them. The goals of orderly community development are not furthered by allowing developers to change the approved development with impunity.

RESTRAINT ON ALIENATION

■ Defendants argue this action by the Village is essentially an illegal attempt to restrain a transfer of ownership of the common area, and hence is ultra vires. Defendants do not contest that the Village has the power to enforce density and open space provisions. They argue that the proper density and open space can still be maintained, no matter who owns the land.

The Village claims it is not attempting to restrict ownership interests, but rather to enforce the area allocated to each lot as approved by the Board pursuant to the zoning ordinance. The minimum lot size for the district is one acre per building.

The Village claims it allowed substandard lots on the condition that the acreage of the individual lot, plus the interest in the common area, would equal the one acre required by the zoning ordinance.

Defendants rely on *Mechem v. City of Santa Fe,* 96 N.M. 668, 634 P.2d 690 (1981). In *Mechem,* the city granted a special exception to operate a private tennis club in a residential district and required that the special exception terminate with any change in ownership. Our supreme court found the restriction on ownership to be ultra vires and unenforceable. We are not persuaded, however, that the Village in the instant case is restricting ownership as was done in *Mechem.*

*Mechem* advanced two arguments in support of its holding, both distinguishable from the present case. First, the court found no valid reason for the restraint. The restriction did not relate to the use of the property but was conditioned solely on a personal right of ownership, i.e., Mechem's. The court stated that any power to make a special exception personal to a particular owner must be found in the zoning statutes or "must be by necessary implication and must reasonably relate to the objectives of zoning." *Id.* at 672, 634 P.2d at 694. The requirement by the Village in this case is authorized by the zoning statutes and the Village ordinance. Second, the *Mechem* court looked at the practical effect of the restriction. It found that the restriction operates to prevent Mechem from selling his property because a purchaser cannot buy it without subjecting himself to "the probability of substantial and costly changes in the character of the property together with significant diminution in value of the property." *Id.* at 673, 634 P.2d at 695. Again, we do not find that the restrictions diminish the value of the property in the present case.

The *Restatement* is consistent with New Mexico law regarding the distinction between restraints on ownership and restraints on use.

No precise rule can be formulated that will distinguish between restraints directed primarily at or having the primary

effect of controlling the use of property, and restraints directed primarily at preventing the alienation of property. The form of the restraint is significant but not necessarily conclusive. The reasons for imposing the restraint, if discernible, may be relevant. The practical effect of the restraint may also be relevant. The restraint may have the effect of making the property more alienable than it otherwise would be.

*Restatement (Second) of Property, Donative Transfers* § 3.4 comment b, at. 154 (1983).

The restraint on the common area is a restriction imposed on the subdivision as a condition of approval. The governing body of a municipality has the authority to impose such restrictions according to its ordinance, as well as Section 3-19-6(E). A zoning authority also has the power to regulate the size of lots and other open space, as well as the location and use of residential buildings and land. § 3-21-1. While these powers can be seen as a restraint on alienation because, without approval, a lot may not be divided into smaller parcels and sold, it is within the municipality's authority to prevent such resubdivisions and sales. *See* §§ 3-20-1 to -16. Here, the individual lots are legally attached to the common area and cannot be sold separately without violating the zoning ordinance and the restrictions imposed on the subdivision. Furthermore, excluding the residents from the use, control, and ownership of the open space would amount to a rezoning to a higher density district without the approval of the zoning authority. Guarding against such an unauthorized rezoning may be one of the paramount reasons for imposing the restraints. Finally, regarding the practical effect of the restraint, there is no indication that the restrictions on the common area would prevent buyers from purchasing the land or diminish the value of the property. In fact, the subdivision lots may be more valuable and desirable if the restrictions were enforced.

The Village is not restricting use to a particular owner as was done in *Mechem*. The conditions regarding the common area continue no matter who owns the land. We find the restraints on the common area to be primarily directed at controlling the use of the property, not its alienation.

CONCLUSION

We hold that the restrictions imposed upon the use and control of the common area are within the power of the planning authority of the Village, and, pursuant to its zoning ordinance and Section 3-19-6(E), the Village can enforce reasonable restrictions required for its approval of the subdivision. Moreover, we do not find the restrictions an illegal attempt to restrain a transfer of ownership. Therefore, the Village has the standing and the authority to enforce the conditions on Lot 8 as provided in the Declarations and the Plat. We deem oral argument unnecessary. SCRA 1986, 12-214. Appellants are allowed costs. We reverse and remand for proceedings consistent with this opinion.

IT IS SO ORDERED.

BIVINS, C.J., and MINZNER, J., concur.