1999-NMCA-132

991 P.2d 511

**Mia S. PRIESKORN, a married woman dealing in her sole and separate property, Plaintiff–Appellant,**

v.

**Edward N. MALOOF, Patty Fields, Jimmy Albert, Nancy Kersey, Frieda K. Albert, The Unknown Heirs of Richard M. Maloof, The Unknown Heirs of Mentaha Maloof, The Unknown Heirs of Najeeb Maloof, The Unknown Heirs of Alfred Weil, The Unknown Heirs of Margarette Meyer, The Unknown Heirs of Bonifacio Baca, and The Unknown Claimants of Interest in the Premises Adverse to Mia S. Prieskorn, Defendants–Appellees.**

**No. 19,653.**

Court of Appeals of New Mexico.

Sept. 16, 1999.

Michael L. Gregory, Las Vegas, for Appellant.

Edward N. Maloof, Las Vegas, Pro Se Appellee.

Kathleen Watson, Kenneth Bateman, Potter & Mills, P.A., Santa Fe, for Appellees Albert, Kersey & Fields.

## *OPINION*

BUSTAMANTE, J.

{1} Plaintiff Mia Prieskorn (Prieskorn) appeals from a judgment refusing to quiet title to certain property in San Miguel County, New Mexico. She contends on appeal that (1) a reversionary clause in a deed affecting a portion of her property unreasonably restrains alienation of her property, and (2) changes in the circumstances of the subject property and its environs are so profound and substantial that enforcement of the reversionary clause would be inequitable. We affirm.

## *BACKGROUND*

{2} Prieskorn was the owner of two parcels of land situated in San Miguel County,

consisting of a total of approximately 26.46 acres. A portion of Prieskorn's land is located within a larger surveyed tract of land consisting of seventy-one acres as described and included in a warranty deed from Najeeb and Mentaha Maloof to the City of Las Vegas (Najeeb Deed), dated December 24, 1935, and recorded January 17, 1936, in the office of the San Miguel County clerk. The Najeeb Deed contains the following restriction:

> provided, however, that this conveyance is hereby made and the land conveyed under the following conditions: That no building now on said premises or to be erected on said land shall at any time be used for immoral purposes, or for the manufacture and/or sale of any intoxicating liquors by the grantee, its succe[s]sors, heirs, and assigns, and that in the event of said condition being broken, then this deed shall become null, void, and of no effect, and all right, title, and interest of, in and to the premises of said above described land hereby conveyed, shall revert to the grantor, his successors and assigns.

The reversionary clause establishes Defendants' interest in the land because, should the reversionary condition be broken, title to the property might revert to Najeeb and Mentaha Maloof, their successors and assigns.

{3} The reversionary clause was the subject of a prior quiet title action in the early 1950s, filed by Prieskorn's predecessor-in-interest. In the prior litigation, the reversionary clause was affirmed as to the entire seventy-one acre parcel conveyed by the Najeeb Deed. *See Leonard Hoskins Post No. 24, American Legion, Inc. v. City of Las Vegas*, No. 14,656 (4th Jud. Dist., San Miguel County, N.M., Feb. 13, 1952). Prieskorn took title to her portion of the land described in the Najeeb Deed with notice of the reversionary clause.

{4} Since 1961, the land conveyed in the Najeeb Deed has been subdivided into multiple ownership with a housing development of thirty homes on the west end and a 204–unit mobile home park constructed by Prieskorn's parents and predecessors-in-interest on the east end. The center portion is undeveloped. To date, there have apparently been no violations of the provisions of the reversionary clause and thus no efforts to enforce it. Nevertheless, Prieskorn argues that she has been unable to obtain title insurance on the property because of the existence of the reversionary clause. She argues in turn that this has adversely affected the value of her property. She provided no evidence that the values of other properties encompassed by the Najeeb Deed have been adversely affected by the reversionary clause.

## DISCUSSION

{5} Before turning to the issues we think it important to define the property interests created by the Najeeb Deed. Clearly, by the insertion of the restriction in the deed the grantors meant to convey something less than a fee simple estate—either a fee simple determinable with an associated possibility of reverter or a fee simple on condition subsequent and right of entry, which is also sometimes referred to as a right of reentry or power of termination.

> No exact language is required to create a determinable fee or a condition subsequent, but there must be a clear indication in the dedication of an intent that an interest is given or granted as a determinable fee or on condition subsequent.... "[A] possibility of reverter is that future interest which a transferor keeps when he transfers an estate and attaches a special limitation which operates in his own favor." When this type of interest is created, the grantee's estate automatically terminates upon the happening of an event. Typical language which is used to justify a possibility of reverter is: "so long as," "during," or "until." On the other hand, "a power of termination (also commonly called a right of re-entry) is that future interest which a transferor retains when he transfers an estate in his own favor." When a right of re-entry is created, the grantor or his heirs are given an election to terminate the estate upon the happening of an event. Language creating a right of re-entry may follow from: "provided that," "but if," or "upon the express condition."

*Wheeler v. Monroe*, 86 N.M. 296, 298, 523 P.2d 540, 542 (1974) (quoting Thomas F. Bergin & Paul G. Haskell, *Preface to Estates*

*in Land & Future Interest* 64, 66 (1966)); *see also* 3 *Thompson on Real Property* §§ 24.01 (discussing possibilities of reverter), 25.01–.03 (discussing rights of entry) (David A. Thomas ed., 1994) (*Thompson on Real Property* ).

■ {6} The provisions of the Najeeb Deed are ambiguous. On the one hand, the condition is introduced by the phrase "provided however that." Normally this language is interpreted as creating a condition subsequent with the grantor and his heirs retaining the associated power of termination. *See* Restatement of Property § 45 cmt. j (1936) (Restatement). However, the condition itself contains language which indicates that the Najeeb Deed is to be "null, void, and of no effect," and that the land is to "revert to the grantor" upon occurrence of the condition. This language suggests that the condition is to operate automatically.

{7} Comment m to Section 45 of the Restatement notes, however, that "[s]uch a conveyance more commonly manifests an intent to create an estate in fee simple subject to a condition subsequent." The commentators addressing the subject agree with the Restatement's position. *See* Lewis M. Simes & Allan F. Smith, *The Law of Future Interests* §§ 247–48 (2d ed. 1956) (Simes & Smith). Representative cases so holding include *Hardman v. Dahlonega–Lumpkin County Chamber of Commerce,* 238 Ga. 551, 233 S.E.2d 753, 755–56 (1977); *Independent Congregational Society v. Davenport,* 381 A.2d 1137, 1139 (Me.1978); *Ohm v. Clear Creek Drainage District,* 153 Neb. 428, 45 N.W.2d 117, 119–20 (1950) (mere expression that the land shall revert is not enough by itself to create a possibility of reverter as distinguished from a right of entry); *Fausett v. Guisewhite,* 16 A.D.2d 82, 225 N.Y.S.2d 616, 617, 621 (1962) (holding where land was conveyed "subject to the following conditions and reservations viz: ... and whenever the property hereby conveyed shall cease to be used for school and meeting purposes ... the same shall revert to and become the property of the first part [sic]," a right of reentry was created); *but see Purvis v. McElveen,* 234 S.C. 94, 106 S.E.2d 913, 914–15 (1959) (con-

cluding with little explanation that similar language created possibility of reverter).

{8} We need not decide for our purposes here whether the Najeeb Deed conveyed a fee simple determinable or a fee simple on condition subsequent (though the latter is more likely). It is enough to recognize that it conveyed one or the other, thus reserving to the grantors and their heirs a property estate, either a possibility of reverter or a power of termination rather than an interest such as an easement or restrictive covenant. *See Concord & Bay Point Land Co. v. City of Concord,* 229 Cal.App.3d 289, 280 Cal. Rptr. 623, 625–26 (1991). We note that the trial court found that the "reversionary clause does not constitute an equitable servitude upon the land." Prieskorn has not challenged this finding.

■ {9} Turning to the trial court's decision in this case, after considering the evidence the court denied Prieskorn's request for a decree quieting title to the property. It concluded that the circumstances surrounding Prieskorn's property had not changed to such a degree that it would be inequitable to enforce the reversionary clause, or that the purpose of the reversionary clause had been defeated. The court also concluded that, even if circumstances had changed, the changes were not so material as to render the purposes of the reversionary clause valueless to the area, or to make the benefits sought by the reversionary clause unobtainable. Finally, the trial court concluded "[t]hat the reversionary clause is a restraint on the use that may be made of the land subject to it and does not constitute a restraint on alienation." (The trial court actually included this latter conclusion among its findings of fact, but we treat it as a conclusion of law nonetheless because it would not be unfair to do so. *See In re Estate of Hilton,* 98 N.M. 420, 423, 649 P.2d 488, 491 (Ct.App.1982) ("Ultimate facts and conclusions of law are often indistinguishable, and their intermixture in the [trial] court's decision as written does not create reversible error where a fair construction of them justifies the court's judgment.").) We review conclusions of law de novo. *See Strata Prod. Co. v. Mercury*

*Exploration Co.,* 121 N.M. 622, 627, 916 P.2d 822, 827 (1996).

*The Reversionary Provision Is Not an Unreasonable Restraint on the Alienation of the Subject Property*

{10} Prieskorn points to the fact that she was unable to sell her property at the price she would have liked to support her argument that the reversionary clause is an unreasonable restraint on alienation. She also claims she has been unable to purchase title insurance on the property because the reversionary clause creates an open question as to whether, in the event of a breach of the reversionary condition, all of the property would revert to the original owners if any part of the property is shown to violate the clause.

{11} Prieskorn relies primarily upon our Supreme Court's decision in *Gartley v. Ricketts,* 107 N.M. 451, 760 P.2d 143 (1988), asserting that, under the factors set forth there, the reversionary clause in the Najeeb Deed is an unreasonable restraint upon alienation. The issue in *Gartley* was whether provisions in a deed ordering that the property in question be offered to a certain named person, or to that person's heirs or assigns, for a specified price before being offered for sale to others, was an unreasonable restraint on alienation. *See id.* at 452–53, 760 P.2d at 144–45. The Court held that the provisions were unreasonable, primarily because they were of potentially unlimited duration and because "the number of persons to whom transfer [wa]s prohibited [wa]s very large," two of the several factors the Court looked to in making its determination. *Id.* at 454, 760 P.2d at 146.

■ {12} In this case, in contrast, although the reversionary clause may be of unlimited duration, it does not direct to whom the property can or cannot be sold. Rather, it merely places restraints on the uses to which the owner can subject the property. "A restraint on the use that may be made of transferred property by the transferee is not a restraint on alienation...." Restatement (Second) of Property: Donative Transfers § 3.4 (1983) (Restatement (Second)); *see also* 10 Richard R.

Powell, *Powell on Real Property,* ¶ 842 n. 14, at 77–21 (1999) (*Powell on Real Property* ). Some of the examples that accompany Section 3.4 of the Restatement (Second) aptly illustrate the difference between potentially invalid restraints on alienation and enforceable restraints on the use of property; they make clear that restraints on use, even though they may serve to limit the number of potential subsequent buyers, do not thereby become restraints on alienation. *See* Restatement (Second), *supra,* § 3.4 illus. 1–2.

{13} To be sure, a restriction may restrain use in form but restrain alienation in substance, in which case it would be subjected to the reasonableness test articulated in *Gartley,* which is derived from the Restatement (Second). *See* 107 N.M. at 453–54, 760 P.2d at 145–46; *see also* Restatement (Second), *supra,* § 3.4 cmt. b & illus. 4. The difference may be difficult to discern. Indeed,

> [n]o precise rule can be formulated that will distinguish between restraints directed primarily at or having the primary effect of controlling the use of property, and restraints directed primarily at preventing the alienation of property. The form of the restraint is significant but not necessarily conclusive. The reasons for imposing the restraint, if discernible, may be relevant. The practical effect of the restraint may also be relevant. The restraint may have the effect of making the property more alienable than it otherwise would be.

Restatement (Second), *supra,* § 3.4 cmt. b; *accord Village of Los Ranchos de Albuquerque v. Shiveley,* 110 N.M. 15, 20–21, 791 P.2d 466, 471–72 (Ct.App.1989).

■ {14} To the extent that Prieskorn presented any evidence at trial, however, to indicate that the primary purpose or ultimate effect of the reversionary clause was to restrain the alienation of the property, substantial evidence clearly supports the trial court's determination that the reversionary clause in the Najeeb Deed is a restraint upon the use of the property, and not a restraint upon the alienation of the property. There is no indication that the use restriction would make

the property any less alienable than any other use restriction that might ultimately result in reversion of the property to the grantor upon breach of a condition subsequent. Moreover, it appears that Prieskorn purchased the property with knowledge of the reversionary clause. Prieskorn's contention that she was unable to sell the property for the price she wanted does not require a decision in her favor. A lower sale price, in and of itself, does not make the restraint one of alienation rather than of use. *Cf. Shiveley,* 110 N.M. at 21, 791 P.2d at 472 (discussing municipality's power to restrict use of proposed subdivision's common area and stating: "[T]here is no indication that the restrictions on the common area would prevent buyers from purchasing the land or diminish the value of the property. In fact, the subdivision lots may be more valuable and desirable if the restrictions were enforced.").

{15} Although Prieskorn is correct that *Gartley* sets forth factors for a court to use in determining whether a restraint upon alienation is reasonable, her reliance on *Gartley* is unavailing because the reversionary clause in the present case is not acting as a restraint on alienation. We therefore turn to Prieskorn's second issue—whether the trial court should have declared the reversionary clause invalid because the area around Prieskorn's property has changed to such a degree that enforcement of the clause would be inequitable.

*The Trial Court's Decision is Supported by Substantial Evidence*

{16} Prieskorn argues that the use restriction in the Najeeb Deed is invalid because the circumstances in and around the subject property have changed to such a degree that enforcement of the reversionary provision would be inequitable. *See Whorton v. Mr. C's,* 101 N.M. 651, 653–54, 687 P.2d 86, 88–89 (1984). Defendants argue that the doctrine of changed conditions does not apply to the reversionary interest created in the Najeeb Deed because, under New Mexico law, the reversionary interest is a present, vested interest in them that cannot be taken away outside the terms of the conveyance.

{17} Defendants may well have a point that the trial court erred in applying the doctrine of changed conditions in this case at all. The commentators and cases again appear to support the general idea that possibilities of reverter and powers of termination as estates in property are not subject to the doctrine of changed conditions. *See Murray v. Trustees of the Lane Seminary,* 140 N.E.2d 577, 585 (Ohio 1956); *Williamson v. Grizzard,* 215 Tenn. 544, 387 S.W.2d 807, 809–10 (1965); Simes & Smith, §§ 1991–93; James A. Webster, Jr., *The Quest for Clear Land Titles—Whither Possibilities of Reverter & Rights of Entry?* 42 N.C.L.Rev. 807, 816–18 (1964); *but see Cole v. Colorado Springs Co.,* 152 Colo. 162, 381 P.2d 13, 16 (1963) (en banc) (apparently applying doctrine to right of reentry).

{18} However, we do not reach that issue because substantial evidence clearly supports the trial court's findings and provides a ready basis for affirmance without requiring a definitive answer to the legal issue. The outcome is the same: the Najeeb Deed survives intact.

{19} Among its findings of fact, the district court found the following:

11. That since 1950 the area around the Najeeb 71 acre tract has developed with a trailer park and a number of fairly expensive single family dwellings being built on a portion of the 71 acres; but more than half of the 71 acres is still vacant. A Walmart, a Hacienda Store, a Pizza Hut and several other commercial buildings, as well as a school and two churches, have been constructed within a block or two of the Najeeb land. The commercial buildings are primarily on the east side and partially on the south side of the Najeeb land, and the remainder of the land around the Najeeb land is residential.

13. That the reversionary clause has not prevented the building of several fairly expensive homes on the west side of the Najeeb land.

14. That since 1961, the Najeeb deed land has been subdivided into multiple

ownership with a housing development of thirty (30) homes on the west end and a 204 unit mobile home park constructed by plaintiff's parents and predecessors on the east end. The center portion is undeveloped.

15. The changes in land use that have occurred in the 71–acre area subject to the reversionary clause and the surrounding area have not rendered the conditions of the reversionary clause without value to the area.

16. The changes in land use that have occurred in the 71–acre area subject to the reversionary clause and the surrounding area are not of such a nature as to have defeated the purposes of the reversionary clause's restrictions.

17. That plaintiff has been unable to sell her mobile home park for the price she wants, and she attributes this to the reversionary clause.

18. That there is no evidence that the sales prices of the other transactions involving the Najeeb deed land have been adversely affected by the reversionary clause.

From these findings the court concluded that any change in circumstances affecting the property since the conveyance were not sufficient to defeat or render the reversionary clause valueless to the subject property.

{20} Appellant does not attack the trial court's findings directly, except to question obliquely the basis for finding number 16. Thus, the court's findings stand essentially unchallenged. Finding number 16 is supported by the same evidence supporting the findings detailing development and growth in the area; that is, the reversionary clause does not appear to have dampened development significantly if at all. The court's conclusion of law concerning the continued value, usefulness, and vitality of the clause are amply supported by the court's factual findings. The only contrary indication is the negative effect on the value of Plaintiff's property. Even if accurate, this is not enough by itself to require a different decision by the district court. *Williams v. Butler*, 76 N.M. 782, 784, 418 P.2d 856, 857 (1966) ("[E]conomic conditions do not warrant abrogation of restrictions because economic conditions may change again tomorrow."); *H.J. Griffith Realty Co. v. Hobbs Houses, Inc.*, 68 N.M. 25, 31, 357 P.2d 677, 681 (1960) ("[T]he mere fact that plaintiff's property might be of more value were the restrictions removed will not justify their removal.").

{21} For the foregoing reasons, we affirm the decision of the trial court.

{22} **IT IS SO ORDERED.**

PICKARD, C.J., and WECHSLER, J., concur.